■ BAYLY, MARTIN & FAY, INC., et al., Appellants, v ALLAN C. GLASER, Respondent. — Order entered June 22, 1982 in Supreme Court, New York County (Rubin, J.), affirmed, without costs. When respondent agreed to work for petitioner BMF New York (a subsidiary of BMF International) as president of BMF Services and senior vice-president of BMF New York, three interlocking contracts were executed simultaneously: an employment agreement, a "stock purchase" agreement and a guarantee agreement of all obligations of BMF Services "contained in the Employment Agreement (Exhibit 'A') and

Stock Purchase Agreement (Exhibit 'B') attached to Employment Agreement" (clause 1). The sixth "WHEREAS" paragraph of this third agreement specifically incorporated the employment contract into the guarantee document and the eighth "WHEREAS" paragraph notes that respondent was "not willing to sign the Employment Agreement (Exhibit 'A') or the Stock Purchase Agreement *attached to the Employment Agreement* without" the guarantee. (Emphasis supplied.) Further, paragraph 11 of the employment agreement provides for the disposition of the stock purchase agreement if employment terminated, and unequivocally incorporates the latter into the former. Clearly, then, these three documents are more than merely related, having as their gravamen the employment of respondent in the above-named executive positions. We disagree with the dissent's comprehension of the provision in the stock purchase agreement requiring a "national certified public accounting firm" to perform certain calculations. The plain effect of this paragraph is to require an accountant to arrive at a repurchase price to be paid to respondent for his shares. Plugging numbers into a formula, however, is not helpful in a dispute over the valuation of the stock where there are claims of misappropriation, conversion and waste of income and assets. After this calculation is performed, it is almost certain that the arbitrator will require testimony from the accountant detailing the source and veracity of his precalculation figures, including assessment of the income and tax statements issued by plaintiff BMF Corp. It may be that the arbitrator will then require alternative calculations to be performed. But respondent's three allegations (misappropriation, conversion and waste) are beyond the scope of the paragraph calling for computation by an accountant. Because of the State policy of giving broad, full effect to arbitration clauses (*Matter of Weinrott [Carp]*, 32 NY2d 190, 196), we believe the disputes arising under the three agreements should be resolved through the arbitration procedure provided for by the primary agreement, the one for employment. (Cf. *Matter of Stone [Freezer]*, 280 App Div 103, affd 304 NY 649; *Siegel v Ribak,* 43 Misc 2d 7, 10.) Concur — Carro, J. P., Fein and Kassal, JJ. Bloom, J., concurs in part and dissents in part in a memorandum and Silverman, J., dissents in part in a memorandum as follows:

Bloom, J. (concurring in part and dissenting in part). I agree with the majority that each of the three agreements, executed simultaneously, must be read as part of an interrelated package. Accordingly, I agree that the arbitration clause contained in the employment agreement applies, with equal force, to the stock purchase agreement. Having said this, I do not think we are free to ignore the express provision for valuation contained in the stock purchase agreement particularly since I am of the opinion that the two provisions may be melded together without doing violence to either. I would require that the issue of misappropriation, waste, conversion, etc., be submitted to the arbitrator and that he be authorized to determine the amount, if any, required to be returned to BMF New York. At that point the arbitrator will become *functus officio* with respect to the stock purchase agreement and the computation of the value of the stock of BMF New York augmented by such amounts, if any, as the arbitrator may require repaid to the corporation, will then be made in accordance with the formula prescribed in paragraph 4 of the stock purchase agreement by a national certified public accounting firm chosen in the manner set forth in paragraph 5 of that agreement.

Silverman, J. (dissenting in part). I would modify the order appealed from so as to stay arbitration of disputes as to the value of shares of stock held by respondent employee and the claims made by him of misappropriation, conversion and waste of income and corporate assets, and I would also stay the claim on the guarantee insofar as relates to these claims. In New York there is a

"special rule that the courts have laid down with respect to arbitration clauses, namely, that the agreement to arbitrate must be direct and the intention made clear, without implication, inveiglement or subtlety". (*Matter of Doughboy Inds. [Pantasote Co.]*, 17 AD2d 216, 218-219.) Further, "[t]he agreement to arbitrate must be express, direct, and unequivocal as to the issues or disputes to be submitted to arbitration". (*Gangel v DeGroot*, 41 NY2d 840, 841.) Insofar as relates to disputes as to the value of the stock, or stockholder's derivative claims for misappropriation, conversion and waste of income and corporate assets, the arbitration clause here involved does not meet these tests. There are three related written agreements between the parties, an "Employment Agreement", a "Stock Purchase Agreement", and a third agreement which is primarily a guarantee agreement. The disputes as to value of the stock and the derivative claim for misappropriation, conversion, etc., obviously relate to respondent's rights under the stock purchase agreement and as a stockholder. Only the employment agreement contains the arbitration clause relied upon for arbitration before the American Arbitration Association. Each of the three agreements contains an introductory clause, which among other things, defines the term "Agreement", i.e., "This Employment Agreement (the 'Agreement')"; "This Stock Repurchase Agreement (the 'Agreement')"; and as to the guarantee agreement "This Agreement (the 'Agreement')". The arbitration clause contained in the employment agreement provides for arbitration of "[a]ny controversy or claim arising out of or relating to *this Agreement*". (Italics mine.) By definition, "this Agreement", as used in the arbitration clause, thus relates only to the employment agreement. The limitation of the arbitration clause to disputes under the employment agreement is further demonstrated by the fact that the stock purchase agreement contains its own provision for resolution of disputes relating to the purchase price of respondent's stock. It sets forth certain formulae for determining the value and purchase price of the stock, and then provides that all determinations with respect to those formulae should be made by "a national certified public accounting firm mutually acceptable to the parties, and such determinations and decisions made in good faith shall be final, conclusive and binding on the parties hereto." The only basis that I can see for arguing that disputes under the stock purchase agreement shall be subject to the arbitration clause in the employment agreement is the fact that paragraph 11 of the employment agreement provides that on termination of the employment agreement or not later than a certain date the company will purchase from respondent his stock "pursuant to the terms of the attached Stock Purchase Agreement, marked Exhibit 'B' and incorporated herein as if set forth in full." But in the face of the limitation of the arbitration clause to the employment agreement and the provision contained in the stock purchase agreement for a different method for determining the most important disputes likely to arise under that agreement, I think that to say that this provision of paragraph 11 of the employment agreement brings under the arbitration clause the entire stock purchase agreement violates the rule "that the agreement to arbitrate must be direct and the intention made clear, without implication, inveiglement or subtlety" (*Matter of Doughboy Inds. [Pantasote Co.]*, 17 AD2d, *supra,* at pp 218-219). This would I think be to arrive at an obligation to arbitrate by "implication, inveiglement or subtlety." It would not meet the higher standard of directness and clarity required for arbitration clauses. The claim with respect to misappropriation, conversion and waste of income and corporate assets is essentially a stockholder's derivative claim. It seems likely that the parties in drafting the agreement never thought of this kind of a claim. There is certainly no clear and direct showing that the parties intended that this kind of a dispute,

involving respondent's rights as a stockholder, should be arbitrated under the arbitration clause in the employment agreement. On the oral argument appellant agreed that, to the extent that a dispute under the employment agreement was arbitrable, the obligations of the guarantee would also be arbitrable. But as I think the stock value and derivative stockholder's claims are not arbitrable, the obligations under the guarantee agreement as to those claims are also not arbitrable, the guarantee agreement containing no arbitration clause.