FABERGE INTERNATIONAL, INC., Appellant-Respondent, v FELICE DI PINO, Respondent-Appellant.

First Department, July 2, 1985

**APPEARANCES OF COUNSEL**

*Max Wild* of counsel (*Rubin, Baum, Levin, Constant & Friedman,* attorneys), for appellant-respondent.

*Richard L. Mattiaccio* of counsel (*Frances B. Bernstein* and *David A. Botwinik* with him on the brief; *Pavia & Harcourt,* attorneys), for respondent-appellant.

**OPINION OF THE COURT**

Asch, J.

The defendant is an Italian-born American citizen who in 1971 returned to Italy to work for plaintiff Faberge International, Inc. as an international sales executive. The defendant held this position until 1973, when he was appointed by Faberge as the general manager of its newly formed Italian branch.

For the first time, in March 1979, Faberge and the defendant entered into a written employment agreement. The defendant's salary was divided into two parts, the larger portion being payable in the United States, in dollars, for work done by the defendant as Faberge's executive vice-president for international sales. A smaller portion of his salary was paid in Italy for his work as head of the Italian branch. The defendant lived on his Italian salary and arranged for an attorney on Faberge's staff to deposit his American salary directly into his account with a bank in the United States.

The agreement provided that it was to be governed by New York law and for arbitration in New York City of all "[c]ontroversies of any kind relating to [the] agreement". The agreement

also contained a clause whereby the defendant, as "EXECUTIVE", "expressly agrees that the COMPANY shall be entitled to injunctive *and other equitable relief* to prevent a breach of this agreement by the EXECUTIVE" (emphasis added).

The employment agreement was based upon the standard form employment agreement developed by plaintiff for executives like the defendant and allegedly was intended to set forth all of the defendant's employment rights. Allegedly, the United Nations Convention governing arbitration awards was never discussed or considered before the employment agreement was executed and plaintiff also alleges that neither it nor the defendant intended to preclude Faberge from resorting to any remedies, including attachment.

In early 1984, McGregor Corporation acquired Faberge, and its Chairman, Daniel J. Manella, announcing a "management shake-up" of Faberge, went to Italy, investigated the defendant's activities, and allegedly discovered "significant wrongdoing" on his part. On July 18, 1984, Faberge's vice-president, Albert Jonus, sent the defendant a letter which terminated him "without notice * * * effective immediately." The letter accused the defendant of sundry and assorted wrongdoings and improper and insubordinate conduct. It directed the defendant to leave the premises of the company and not return, surrender all company cards and return forthwith all company property and documents in his possession, custody and control.

On July 20, 1984, the defendant sent Faberge a letter in response stating that he rejected "the termination for just cause because the events which you list are baseless and specious", and "I reserve all rights which I may have against your Company under the laws of the State of New York and of the Republic of Italy". The defendant's Italian attorney promptly informed Faberge's Italian attorney that he intended to institute a summary judgment proceeding in Italy to collect any amounts due for termination and action before the Italian Labor Court and/or arbitration tribunal to enforce his rights under the Italian labor laws and arbitration proceedings in New York to enforce his rights under the employment agreement.

Plaintiff commenced this action against defendant and moved for a preliminary injunction enjoining defendant from revealing trade secrets and confidential information, from commencing suit in any forum other than New York, and seeking attachment of the funds of defendant in the possession of banks and others in New York. Defendant cross-moved for an order staying this action pending arbitration. Special Term granted plaintiff's

motion for a preliminary injunction enjoining defendant from revealing trade secrets and confidential information and from commencing any action or proceeding in the Italian forum. Defendant's cross motion to compel arbitration pursuant to the agreement was also granted. Special Term, additionally, denied attachment of defendant's assets.

 Special Term was correct in denying the attachment both as a matter of law and fact. However, it erred in enjoining defendant from disclosing trade secrets by failing to apply the proper standards applicable to preliminary injunctions. Finally, although Special Term was correct in staying the action and directing arbitration in New York, it erred in restraining defendant from pursuing his Italian statutory rights in an Italian forum.

The employment agreement contains a broad arbitration clause stating in relevant part: "Controversies of any kind relating to this agreement shall be settled by arbitration in accordance with the rules then obtaining of the American Arbitration Association in the State of New York, which said arbitration shall be conducted in the City and State of New York." Paragraph 9 (a) of the employment agreement describes fraud, embezzlement and misappropriation of company funds as grounds for termination which excuse plaintiff Faberge from claims of breach for wrongful termination, and from making otherwise contractually required severance payments. Thus, Faberge's present claims are clearly issues which the parties intended to be arbitrated. In any event, the type of claims made by Faberge are arbitrable under the broad arbitration agreement herein (*see, Menaker v Padover,* 75 AD2d 807; *Bayly, Martin & Fay v Glaser,* 92 AD2d 850).

 The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (*see,* text of convention following 9 USC § 201) provides (art I, § 3) that an agreement arising out of a legal relationship, contractual or not, "considered as commercial", falls within its purview. In addition, it provides that any agreement or award arising out of such a relationship, which is entirely between citizens of the United States, does *not* fall within the Convention unless it envisages performance or enforcement abroad or has some other reasonable relation with a foreign State. It is clear that the agreement herein contemplated performance abroad. Defendant was employed as plaintiff's Italian branch manager. In addition, contrary to plaintiff's assertion, the employment agreement is also one which must be "considered as commercial" within the meaning of the Convention. The fact that the employer-employee

relationship may include a degree of fiduciary obligation does not deprive it of its commercial character.

The Court of Appeals has concluded that the Convention "precludes the courts from acting in any capacity except to order arbitration, and therefore an order of attachment could not be issued. To hold otherwise would defeat the purpose of the UN Convention" (*Cooper v Ateliers de la Motobecane,* 57 NY2d 408, 414).

In any event, the arbitration statute does not now permit such a provisional remedy to be granted in a proceeding to compel arbitration (CPLR 7503 [a]) and as indicated by the court in *Cooper,* an order of attachment might remain valid if it were obtained with notice or confirmed in a contract action *before* the defendant obtained a stay of the proceedings on the grounds the underlying controversy was subject to arbitration (*supra,* at p 413). Thus, attachment prior to arbitration is unavailable in New York unless a defendant with notice fails to seek a stay of litigation, concededly not the case herein.

■ Special Term was also correct in staying the litigation herein pending arbitration and rejecting plaintiff's claim that defendant had waived arbitration. Waiver requires an active participation in litigation or other conduct inconsistent with an intent to reserve any issues for arbitration (*De Sapio v Kohlmeyer,* 35 NY2d 402). Here, defendant contended that his Italian statutory rights were not based on the employment agreement and were not covered by it, and he also made it clear that he had no intention of waiving his contractual right to arbitrate under the agreement.

■ In addition to being unavailable by reason of the existing case law and the United Nations Convention, attachment was properly denied since plaintiff Faberge failed to meet its burden of proof that it was entitled to the drastic remedy of attachment. Thus, Faberge was obligated to "show, by affidavit and such other written evidence as may be submitted, that there is a cause of action, that it is probable that the plaintiff will succeed on the merits, that one or more grounds for attachment provided in section 6201 exist, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff" (CPLR 6212 [a]). Faberge failed to meet this burden with substantial written evidence as required by the statute (*Zenith Bathing Pavilion v Fair Oaks S. S. Corp.,* 240 NY 307, 311). As noted by Special Term, much of plaintiff's proof rested on "speculation and conjecture" and some of it was "flatly contradicted by disinterested parties."

■ However, for the same reason, Special Term was in error when it granted plaintiff an injunction against disclosure by defendant of trade secrets and other confidential information. Preliminary injunctions are also "drastic" remedies which require a clear showing of likelihood of ultimate success on the merits, that the movant will suffer irreparable injury unless the relief sought is granted and that the balancing of the equities lies in favor of the movant. Proof establishing these elements must be by affidavit and other competent proof, with evidentiary detail. If key facts are in dispute, the relief will be denied (*Eljay Jrs. v Rahda Exports,* 99 AD2d 408). Here, once again, plaintiff failed to meet this evidentiary burden. Its proof rested solely on "speculation and conjecture" and the grant of injunctive relief was, therefore, an abuse of discretion.

■ Likewise, Special Term erred when it granted an injunction against "defendant's resort to foreign arbitration." The court recognized that if defendant's claims were analogous to Social Security benefits, then it could not prevent him from seeking to recover on those claims in Italy. However, it then decided to require him to bring what it recognized as Italian statutory claims before the New York arbitrators.

Faberge, as the movant, had the burden of proof and failed to sustain this burden by showing that defendant should be enjoined from proceeding pursuant to Italian law to obtain certain Italian statutory severance benefits. The Court of Appeals has stated: "The use of the injunctive power to prohibit a person from resorting to a foreign court is a power rarely and sparingly employed, for its exercise represents· a challenge, albeit an indirect one, to the dignity and authority of that tribunal. Accordingly, an injunction will be granted only if there is danger of fraud or gross wrong being perpetrated on the foreign court" (*Arpels v Arpels,* 8 NY2d 339, 341).

The record herein is devoid of any proof whatsoever, as urged by plaintiff, that the arbitration clause was intended to encompass defendant's Italian statutory rights. Even assuming a finding that the arbitration clause *had* been intended as a waiver of defendant's Italian statutory rights, Special Term, acting pursuant to the principles of comity, should have then weighed the Italian public policy objectives of the affected statutes against New York's policy in favor of arbitration to determine whether any waiver should be enforced. Thus, the court should have been provided with information as to whether a waiver of the Italian statutory rights would be enforceable in Italy. No such material appears in the record. Therefore, Special Term's conclusions

that defendant's statutory benefits were not analogous to Social Security and that an injunction would not violate Italian public policy were unsupported by any authority.

Since there is nothing in the record to indicate that the defendant's Italian statutory claims arose out of the agreement or were subsumed or precluded by the agreement, these claims had a validity that did not arise or depend upon the agreement. Therefore, these issues were, upon the proof presented, clearly directed to the competent Italian tribunals and it was an abuse of discretion to enjoin defendant from enforcing those rights in these tribunals.

Accordingly, the order of the Supreme Court, New York County (Martin Evans, J.), entered on August 31, 1984, which, *inter alia,* denied plaintiff's motion for an order of attachment and granted defendant's cross motion to compel arbitration, should be modified, on the law, to the extent of vacating both injunctions granted plaintiff, and otherwise affirmed, without costs.

KUPFERMAN, J. P., ROSS, BLOOM and FEIN, JJ., concur.

Order, Supreme Court, New York County, entered on August 31, 1984, unanimously modified, on the law, to the extent of vacating both injunctions granted plaintiff, and otherwise affirmed, without costs and without disbursements.