■ L & J ROOST, LTD., et al., Respondents, v DEPARTMENT OF CONSUMER AFFAIRS OF THE CITY OF NEW YORK et al., Appellants.—In an action for a judgment declaring that Regulation 6, pertaining to Administrative Code of the City of New York former chapter 32, title B, article 5 (now tit 20, ch 2, subch 3),

which rescinded the defendants' "type-approval" of certain specified video poker game machines, is invalid and an unconstitutional infringement of the plaintiffs' property rights, and for a permanent injunction barring the defendants from enforcing Regulation 6, the defendants appeal, as limited by their brief, from so much of an order of the Supreme Court, Kings County (I. Aronin, J.), dated January 31, 1986, as granted that branch of the plaintiffs' motion which was for a preliminary injunction staying enforcement of the regulation.

Ordered that the order is reversed insofar as appealed from, with costs, the aforementioned branch of the motion is denied, and the preliminary injunction is vacated.

Pursuant to Administrative Code former chapter 32, title B, article 5 (now tit 20, ch 2, subch 3), the Department of Consumer Affairs (hereinafter the Department) has the authority to license common show operators and attendants. Common show operators are licensed to have a given number of machines on their premises, which machines must be of a type on the Department's "approved" list. In connection with his powers over the licensing of common show operators and attendants, the Commissioner of the Department is authorized to promulgate, amend and rescind regulations with respect to such licensed activities in order "to protect the health, safety, convenience and welfare of the general public" (Administrative Code former § 773-4.0 [b] [1], [6]; now § 20-104 [b] [1], [6]; NY City Charter § 2203 [e]). Pursuant to this authority, and after having held a public hearing on November 5, 1984, the Commissioner of the Department promulgated Regulation 6, which rescinded type-approval of the following video poker games: "Joker Poker", "Hi-Lo Double-Up Joker Poker", "Player's Pick", "Wild I", "Draw Poker", "Skill Top Draw Poker" and "Dwarf's Den". The explanation given for this regulation was that the Department had concluded after reviewing all the testimony and evidence presented at the public hearing that these machines were all commonly used in illegal gambling activity and were designed in such a fashion that they were readily susceptible to such illegal gambling use. They were therefore not eligible to be put on the Department's approved list of common show games (see, Administrative Code former § B32-40.0 [a] [3]; [d], now § 20-211).

The plaintiffs, a group of tavern owners who are licensed by the Department to operate video poker machines on their premises as common shows and of owners and distributors of video poker machines, commenced the instant action in or about August 1984 seeking a judgment declaring Regulation 6

invalid and enjoining its enforcement. At approximately the same time, they made a motion seeking, *inter alia,* a preliminary injunction preventing the Department from enforcing Regulation 6 during the pendency of this action. In support of this motion, they submitted affidavits by themselves and also by a number of other tavern owners who were common show operator licensees.

The affidavits by the plaintiffs who were distributors and owners of these games stated that they had invested in excess of $2,000 in the purchase of each of these video poker machines, and that Regulation 6 would prevent them from being able to recoup this initial investment. In addition, they submitted that the video game industry was subject to shifting trends and fluctuations in popularity, and that video poker games were presently at their "peak of popularity". However, they failed to submit any financial records or other evidence to substantiate the claim that they had not already recouped their initial investment in these machines. They also failed to produce any evidence corroborating their claim that the popularity of video poker games had reached its peak and was in danger of declining during the pendency of this action.

The affidavits by the tavern owner plaintiffs, and other individuals who were common show licensees, alleged that the video poker machines which they had on their premises had become an "important source of revenue" and were also a major source of attraction of customers which helped to increase their over-all businesses. Again, however, no financial records or other evidence were produced to show how significant the revenue from these machines actually was, or to what degree their installation in fact increased over-all business.

It is well settled that in order to be entitled to a preliminary injunction, a movant must clearly demonstrate: (1) a likelihood of ultimate success on the merits, (2) irreparable injury absent granting of the preliminary injunction, and (3) a balancing of the equities in his favor *(Grant Co. v Srogi,* 52 NY2d 496, 517; *Interfaith Med. Center v Shahzad,* 124 AD2d 557; *Faberge Intl. v Di Pino,* 109 AD2d 235, 240). In this case there was a failure to submit sufficient proof to show that the plaintiffs would suffer "irreparable injury" absent the granting of this preliminary injunction *(see, Armbruster v Gipp,* 103 AD2d 1014, citing Siegel, NY Prac § 328). The bare conclusory allegations made by the plaintiffs were insufficient to satisfy their burden *(see, Kaufman v International Business Machs. Corp.,* 97 AD2d 925, 926, *affd* 61 NY2d 930; *Henry v Suffolk*

*Home Distrib.,* 118 AD2d 685; *Metropolitan Package Store Assn. v Koch,* 80 AD2d 940, 941). Moreover, the Department clearly had a legitimate interest in the enforcement of Regulation 6 as a means of protecting the consuming public from illegal gambling activity. In the absence of a sufficient showing by the plaintiffs that enforcement of Regulation 6 during the pendency of this action would result in an irreparable injury to them, the balancing of equities favored the defendants *(see, Lowe v Reynolds,* 75 AD2d 967, 968; *De Pina v Educational Testing Serv.,* 31 AD2d 744, 745).

As a result, the granting of the preliminary injunction by the Supreme Court, Kings County, was an improvident exercise of its discretion *(see, Faberge Intl. v Di Pino, supra,* at 240; *Armbruster v Gipp, supra; Rosen Monuments v Madonick Monuments,* 62 AD2d 1053). Bracken, J. P., Rubin, Sullivan and Harwood, JJ., concur.