*791 OPINION OF THE COURT
Sandra J. Feuerstein, J.
If a kiss can turn a frog into a prince, can a flea market become a department store if it is held indoors and does not sell food?
The Nassau County Veterans’ Memorial Coliseum (Coliseum) is wholly owned by the plaintiff County of Nassau (County). In 1979 the County entered into a lease agreement (Lease) with the predecessor in interest of defendant Spectacor Management Group (SMG). The Lease has been extended for four additional five-year terms and is presently in effect.
Pursuant to section 19.2 of the Lease the lessee “shall not permit to be operated at the Coliseum a ‘Flea Market’ as it is commonly known, comprised and constituted in Nassau County. (For example: the ‘Flea Market’ as operated at various times at Roosevelt Raceway, Westbury, Nassau County.)”
In June 1997 the defendant SMG entered into exhibition agreements with defendant, Plain and Fancy Shows (Plain and Fancy), licensing the latter to produce two shows, one for the retail sale of apparel and accessories and the other for the retail sale of a variety of goods, from picture frames to perfumes and from stamps to sports equipment. According to the advertising of the latter event, the “Holiday Extravaganza” would have over 300 vendors “featuring everything you need to make your holidays complete.”
The County has commenced suit seeking a permanent injunction against the defendants and a declaration that the “Apparel and Accessory Show”, scheduled for December 5th through 7th, and the “Holiday Extravaganza Show”, scheduled for December 12th through 14th, violate the Lease agreement between SMG and the County because they are flea markets. The defendants claim that neither of these proposed shows and sales are flea markets because their venue is inside the Coliseum, because the goods are new, and because no food will be sold.
Following the signing of an order to show cause which stayed the shows, on December 5, 1997, the return date of the order to show cause, the stay was lifted with regard to the “Apparel and Accessory Show”, on condition that the defendants cancel any advertising of the second show and remove any outdoor advertising which referred to the shows and the retailers previously working at the Roosevelt Raceway Flea Market. Despite the fact that one show has already taken place, the matter *792 with respect to that show is not moot, since the defendants have clearly indicated their intention to schedule these shows on, at least, an annual basis.
A hearing was held on December 9, 1997. Based upon the evidence adduced at the hearing, as well as the papers and exhibits submitted by the parties, I find that the issues raised regarding the two proposed shows are different and that the “Apparel and Accessory Show”, limited to items of clothing and accessorial products, is permissible under the Lease. This decision is based primarily upon two factors: the nature of the merchandise to be sold and the prior dealings between these parties.
According to the County’s expert, Joel R. Evans, Ph D, a “flea market” is defined as follows: “The flea market is rooted in the centuries-old tradition of street selling—shoppers touch, sample, and haggle over goods of all kinds. Once, flea markets sold only antiques, bric-a-bracs, and assorted used merchandise. Today, flea markets sell new merchandise such as clothing, foods, housewares, and cosmetics. Flea markets are normally located in sites not associated with retailing: race tracks, stadiums, drive-in movie parking lots, and former supermarket and department store outlets. They may be indoor or outdoor.” (Retail Management: A Strategic Approach, at 103 [2d ed 1983].)
The defendants have demonstrated, and the plaintiff has failed to refute the fact that the nature of the items to be sold at this first show is limited to wearing apparel and accessories, albeit broadly defined. One of the key elements of a flea market as described by the parties and their exhibits is the sale of a variety of goods by many individual vendors who rent a small section of a larger space in which to ply their wares. By limiting the items to be sold to those worn upon the human body, the promoters have placed the “Apparel and Accessory Show” into the category of a specialized retail show, analogous to previous shows and sales of antiques, furs, home improvement products, ski equipment, ceramics, boats and plants. These shows, which gathered many retailers of a category of goods to sell those goods to the public were held without objection by plaintiff and in some cases managed by the County prior to the present Lease. Thus, the plaintiff has waived its right to object under the Lease to the sale of new clothing both by previously permitting an identical sale to proceed at the Coliseum and by permitting other limited category retail shows to be conducted.
With respect to the “Holiday Extravaganza”, the issues are different. Contrary to defendants’ claim, the fact that the items *793 will be unused and that food will not be sold are not dispositive; nor is the fact that the sale will be held under a roof.
The list of items to be sold cannot be categorized, including as it does everything from c.d.’s to cosmetics and including such amorphous classifications as “gift baskets”, “demo’s”, and “novelties”. Indeed, many of the items originally proposed to be sold at the show were specifically stated to be “unacceptable” by the general manager for SMG in communications to Plain and Fancy. And, in a letter to the plaintiff, Mr. Elder, referring to the “Apparel and Accessory Show” concedes that “Had we not excluded all of the various items, this could be described as a Flea Market.”
The variety of merchandise, which defendants trumpet in their advertising of the “Holiday Extravaganza”, militates against their position as does the prominent acknowledgment that the “operator” and the vendors are from the now defunct Roosevelt Raceway Flea Market, thereby appealing to flea market patrons. It is noted that once this suit had begun, the “Holiday Extravaganza” became the “Holiday Gift Extravaganza”, as the defendants struggled to find a theme for the show.
Nor can it be claimed that the plaintiff has waived its fight to object to the “Holiday Extravaganza”. The proposed “Holiday Extravaganza” falls squarely within the above-quoted definition of a flea market contained in the text Retail Management.
While frogs become princes in fiction, this court’s concern is substance rather than semantics or site. In real life, Bloomingdale’s does not become a flea market because it sells food, and a flea market cannot transform into Saks Fifth Avenue or Lord & Taylor by the addition of a dome; placing a sow’s ear in a Gucci bag does not make it a silk purse and moving Minnie Pearl to Lincoln Center, even sans hat, would not make her a diva. With respect to the “Holiday Extravaganza”, to paraphrase Popeye, “it is what it is,” and it is a flea market.
While the parties have focused their arguments on the application for a preliminary injunction, a determination of the preliminary injunction motion is unnecessary because counsel for the parties were advised and agreed that the hearing would result in a determination of the entire matter—a final declaration of the rights of the parties.
In any event, if I were to address only the preliminary injunction it would be granted.
While ordinarily injunctive relief will not be granted where its effect will be to grant all the relief to which a party may be *794 entitled, after a trial, where, as here, irreparable injury will occur before a trial can be held the injunction should be granted (see, Societe Anonyme Beige D’Exploitation De La Navigation Aerienne [Sabena] v Feller, 112 AD2d 837).
Based upon the foregoing, the plaintiff has demonstrated the likelihood of success upon the merits, and the fact that the presentation of the “Holiday Extravaganza” would create irreparable injury to citizens of the County. It has been held that the court’s function, on an application such as that presented here, is to consider the interests of the general public in addition to the interests of the parties (see, L & J Roost v Department of Consumer Affairs, 128 AD2d 677, 680; De Pina v Educational Testing Serv., 31 AD2d 744, 745; Westhab, Inc. v Elmsford, 151 Misc 2d 1071, 1075). Those engaged in businesses would be hurt by the “Holiday Extravaganza” sales, to an incalculable degree and in an undeterminable amount (not to mention the disincentive to potential retail tenants, who operate in flea markets and who might otherwise secure permanent quarters and thus help the County’s economy and local commercial property owners). Additionally, while not dispositive, SMG agreed, in section 31.9 of the Lease, that the County had the “right of injunction to restrain” a breach or threatened breach of the Lease. The County has also demonstrated that the presentation of the “Holiday Extravaganza” would, in fact, be a clear violation of the Lease, thus demonstrating that the equities lie in plaintiff’s favor.
Accordingly, it is declared that the Lease between the County and SMG prohibits the “Holiday Extravaganza” and SMG is permanently enjoined from conducting such an event.