| Colle Capital Partners I, L.P. v Automaton, Inc. |
| :---: |
| 2025 NY Slip Op 31479(U) |
| April 25, 2025 |
| Supreme Court, New York County |
| Docket Number: Index No. 659292/2024 |
| Judge: Margaret A. Chan |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49M

----------------------------------------------------------------------------X

| | |
|---|---|
| COLLE CAPITAL PARTNERS I, L.P., COLLE LOGISTICS ASSOCIATES LLC | **INDEX NO.** 659292/2024 |
| Plaintiffs, | **MOTION DATE** 11/29/2024 |
| - v - | **MOTION SEQ. NO.** MS 001 |
| AUTOMATON, INC., | |
| Defendant. | **DECISION + ORDER ON MOTION** |

----------------------------------------------------------------------------X

HON. MARGARET A. CHAN:

The following e-filed documents, listed by NYSCEF document number (Motion 001) 11, 19, 20, 21, 22, 23, 25, 26, 27, 28, 29, 30, 31, 41

were read on this motion to/for        INJUNCTION/RESTRAINING ORDER            .

In this action for breach of convertible notes and a convertible note purchase agreement, plaintiffs Colle Capital Partners I LP and Colle Logistics Associates LLC (together plaintiffs) move for preliminary injunction against defendant Automaton Inc (Automaton) to enjoin Automaton from taking any action requiring shareholder or board approval unless plaintiffs or their chosen director are allowed to vote, and to require defendant Automaton to release certain information to plaintiffs. Automaton opposes the motion. Based on the parties submissions and after oral arguments, the motion is denied as explained below.

## Background

The following facts are drawn from the materials submitted in connection with this motion as well as the allegations set forth in plaintiffs' complaint.

### *The CNPA and 2018 Promissory Notes*

Plaintiffs are two Delaware companies that invested in Automaton by purchasing two identical Convertible Promissory Notes in 2018 (Notes or 2018 Notes) pursuant to a Convertible Note Purchase Agreement (CNPA) (*see* NYSCEF # 1, Complaint, ¶¶ 4, 9-10). The Notes are the only members of their series, meaning plaintiffs own the entire series (*id.* ¶¶ 14-15, 22). The maturity date was February 10, 2019 (*id.* ¶ 17).

**659292/2024   COLLE CAPITAL PARTNERS I, L.P. ET AL vs. AUTOMATON, INC.**                **Page 1 of 6**
**Motion No.  001**

1 of 6

The Notes are "convertible" in that after the maturity date, a "requisite majority" of the Noteholders (i.e., plaintiffs) can elect to convert the Notes into a new series of preferred stock in Automaton (*id.* ¶ 18, quoting NYSCEF # 3, 2018 Note, § 2.3). This new series of stock would have all the same "right[s], privileges, preferences and restrictions" as Automaton's "Series Seed Preferred Stock"—a powerful class of stock that, among other things, has the right to appoint a director to the Board of Directors (NYSCEF # 1 ¶¶ 18, 30; *see also* NYSCEF # 8, Automaton Charter, at Article IV ¶ [B] [6] [b]). As for the amount of this new stock, the Notes would convert at a rate set by an equation in § 2.3 (NYSCEF # 1 ¶¶ 18, 26, citing NYSCEF # 3 § 2.3).

Perhaps most importantly, plaintiffs did not have to wait for their new stocks to have the rights of stockholders. Instead, section 3.2 of the Notes requires only that plaintiffs deliver a "conversion notice," after which they will be "treated for all purposes as the record holder of the applicable securities" (NYSCEF # 1 ¶¶ 23, 25, citing NYSCEF # 3 § 3.2). Automaton is then required to actually issue the stock certificates "[a]s soon as practicable" (NYSCEF # 3 § 3.2).

Meanwhile, the CNPA requires that "[p]rior to the issuance" of the new stock, Automaton will "[i] obtain any necessary stockholder approval . . . [ii] any necessary corporate approval," and [iii] authorize "a sufficient number of [stocks] . . . under [Automaton's certificate of incorporation or Charter] to provide for the issuance . . . upon conversion of the Notes" (NYSCEF # 2, CNPA, § 9 [c]). The CNPA also requires certain informational disclosures (NYSCEF # 1 ¶ 35).

### The Notes Do Not Get Converted

Plaintiffs issued a notice of conversion on September 25, 2024, several years after the maturity date (NYSCEF # 1 ¶ 24). They then proceeded to privately elect Douglas Benowitz as their director to Automaton's Board per their interpretation of their rights (*id.* ¶ 31). However, plaintiffs claim Automaton refused to process the conversion, recognize their appointee, Benowitz, as a director, or take any steps to issue stocks or produce information as required under the Notes and CNPA (*id.* ¶¶ 32-34).

But Automaton claims that it had already issued the maximum number of shares allowed under its Charter by the time of the conversion notice and therefore could not issue more without amending the Charter (NYSCEF # 28, Automaton mol, at 3, citing NYSCEF # 26, Rate Cap Table; *see also* NYSCEF # 25, Zenner Aff, ¶¶ 3-4 [explaining that all stocks in Rate Cap table are not publicly traded]). Automaton claims it intended to "address this issue in connection with a Series B capital raise which [was] expected to begin in earnest in January 2025" (NYSCEF # 18, Automaton TRO Letter Opp, at 1-2). Plaintiffs brought this case and moved for an injunction rather than wait (NYSCEF # 28 at 4). At oral argument on April 24, 2025, the parties revealed that Automaton had indeed amended its Charter and

**659292/2024   COLLE CAPITAL PARTNERS I, L.P. ET AL vs. AUTOMATON, INC.**
**Motion No.  001**

Page 2 of 6

2 of 6

obtained $18 million in funding but had not created the required new series of stock.

Similarly, Automaton claims the Board of Directors only has so many seats, and so a Charter amendment would be required to make one appear for Benowitz (*see* NYSCEF # 19, Dec. 4, 2024 Hearing Tr, at 8:13-20). Automaton disputes that it even needs to make a new seat under Delaware law (NYSCEF # 18 at 3).

### *The Present Case and Motion*

Plaintiffs filed this case on November 25, 2024, pleading one count for breach of the Notes and a separate count for breach of the CNPA (NYSCEF # 1 ¶¶ 41, 49). Plaintiffs simultaneously brought a motion for temporary restraining order and preliminary injunction (*see* NYSCEF # 11, Proposed OSC for TRO). Plaintiffs' request that Automaton be enjoined from taking any action that "requires or is conditioned on shareholder approval . . . [or] board approval" unless they allow plaintiffs to participate as shareholders, recognize Benowitz as a director, or otherwise take steps to effectuate the conversion (NYSCEF # 15 at 4; *see also* NYSCEF # 11 [requesting same]). Plaintiffs also ask for Automaton to release certain information per the CNPA (NYSCEF # 15 at 4).

Plaintiffs argue they are likely to succeed on the merits because Automaton owes them the relief under the CNPA and Notes. Plaintiffs claim that they will suffer irreparable harm because they are being deprived of voting rights (*see* NYSCEF # 15 at 7). Finally, plaintiffs argue that the balance of the equities is in their favor because they are merely asking for what the CNPA and Notes already require: that plaintiffs be treated as holders of powerful stocks right now (*id.* at 7-8).

Automaton responds that plaintiffs cannot show a likelihood of success on the merits or irreparable harm because the claims are barred by the UCC. To put it simply, Automaton argues that the stocks plaintiffs are asking for do not exist, and therefore Automaton cannot issue them without causing an "overissuance" prohibited by UCC § 8-210 (NYSCEF # 28 at 6-8). Automaton argues that § 8-210 limits plaintiffs to just two potential remedies: purchase of other outstanding stock (of which there is none), or money damages (*id.* 7-8). Automaton points out that neither of these remedies is specific performance, which is what plaintiffs are requesting in the Complaint, and so plaintiffs must therefore lose on likelihood of success on their Notes claim (*id.* at 8-9). Similarly, Automaton argues that because there are no outstanding stocks to buy, plaintiffs are limited to just money damages under § 8-210 and therefore cannot show irreparable harm on the Notes claim (*id.* at 10-11). Separately, Automaton argues that plaintiffs cannot show irreparable harm on the CNPA claim because they have no information rights.

Plaintiffs reply that UCC § 8-210 is "inapposite" because that claim "does not seek to compel Automaton to issue shares in excess of the number of shares

**659292/2024   COLLE CAPITAL PARTNERS I, L.P. ET AL vs. AUTOMATON, INC.**          **Page 3 of 6**
**Motion No.  001**

3 of 6

currently authorized," but instead merely asks that plaintiffs be "treated as preferred shareholders" as promised in the Notes (NYSCEF # 28, Reply, at 7). Plaintiffs point out that § 9(c) of the CNPA requires Automaton to "obtain the corporate approvals necessary to prevent the occurrence of an 'overissue'" (*id.* at 8).[1] Plaintiffs also claim a likelihood of success on their CNPA claim because the claim is not limited to just informational rights, but also to conversion of the Notes into the relevant shares (*id.* at 8-9). Plaintiffs reiterate that irreparable harm is clear since their voting rights are being deprived (*id.* at 9-12). Finally, plaintiffs argue that defendants made no other arguments about balance of equities other than irreparable harm, thus waiving any argument (*id.* at 13).

At a hearing on December 4, 2024, the court denied plaintiffs' request for a temporary restraining order (*see* NYSCEF # 19 at 21:9-16, 23:15-20). The court found that plaintiffs had failed to establish imminent irreparable harm because they could not point to any specific and harmful corporate action that Automaton was about to take (*id.*). Plaintiffs appealed the decision and requested a preliminary injunction from the First Department, but their request was denied on January 23, 2025 (*see* NYSCEF # 38, Remittur).

The parties appeared for further oral argument on Thursday, April 24, 2025 (*see* NYSCEF # 41, Apr. 24, 2025 Hearing Tr.). The parties revealed three major changes since December. First, Automaton has apparently raised $18 million by selling new convertible notes to other investors (*id.* at 3:3-5). Second, Automaton amended its Charter in February 2025 to increase the amount of common stock but not create the stock now owed to plaintiffs (*id.* at 5:19 – 6:2). Third, Automaton offered to convert plaintiffs' Notes as part of a forthcoming "Series B equity raise," which plaintiffs claim would "nullify plaintiffs' earlier conversion of their notes as of September 25, 2024" (*id.* at 3:6-13).

## Discussion

A preliminary injunction is a drastic remedy, which should not be granted unless the movant demonstrates a "clear right" to such relief (*City of New York v 330 Continental, LLC*, 60 AD3d 226, 234 [1st Dept 2009]). To be entitled to a preliminary injunction, a party must establish three elements: (1) a likelihood of success on the merits, (2) irreparable injury if the preliminary injunction is withheld, and (3) a balance of equities tipping in favor of the moving party (*1234 Broadway LLC v West Side SRO Law Project*, 86 AD3d 18, 23 [1st Dept 2011], citing Doe v Axelrod, 73 NY2d 748 [1988]). If any one of these three requirements is not satisfied, the motion must be denied (*Faberge Intern., Inc. v Di Pino*, 109 AD2d 235 [1st Dept 1985]). Moreover, "[p]roof establishing these [requirements] must be by affidavit and other competent proof with evidentiary detail" (*Scotto v Mei*, 219

---

[1] The parties further address the UCC § 8-210 issue in Automaton's pending motion to dismiss (MS 002).

659292/2024  COLLE CAPITAL PARTNERS I, L.P. ET AL vs. AUTOMATON, INC.
Motion No. 001

Page 4 of 6

4 of 6

AD2d 181, 182 [1st Dept 1996]). Whether to grant a preliminary injunction is "committed to the sound discretion of the motion court" (*Harris v Patients Med., P.C.*, 169 AD3d 433, 434 [1st Dept 2019]).

While the parties speak about "overissue" under UCC § 8-210, here, Automaton has refused to issue any stock, so there has not been an overissue. To the extent Automaton argues that any issue would cause an overissue, that argument seems to be belied by the CNPA: section 9(c) requires that "*[p]rior* to the issuance" of the conversion stocks, Automaton will "obtain any necessary stockholder approval . . . [and] corporate approval," and amend the Charter to "authorize . . . [and] a sufficient number of" new stocks (NYSCEF # 2 § 9 [c] [emphasis added]). Automaton therefore promised to make sure it could validly issue any stocks before such stocks are issued. To now claim an overissue is to effectively concede plaintiffs' breach of contract claim, proving plaintiffs' likelihood of success on the merits. Similarly, Automaton's argument that there is no irreparable harm because plaintiffs are limited to monetary damages is unlikely to succeed given that UCC § 8-210 likely does not apply absent any issue to cause an overissue.

However, even if plaintiffs have shown a likelihood of success on the merits and irreparable harm, their motion must be denied on the balance of equities because plaintiffs' harm does not outweigh Automaton's. Plaintiffs' proposed injunction would force Automaton to cease all business unless they give plaintiffs, who do not currently have stock or official positions in Automaton, the chance to weigh in on all decisions that shareholders and board members, respectively, would be entitled to weigh in on. Plaintiffs ask for one exception: defendants to conduct any business or votes necessary to effectuate plaintiffs' stock conversion. However, contrary to plaintiffs' assertions, this is, in effect, the ultimate relief plaintiffs request in the case (*see* NYSCEF # 1 at Prayer for Relief [a]-[b]). More importantly, the proposed injunction allows plaintiffs to hold Automaton hostage unless the company meets their demands. Plaintiffs provide no authority for such broad relief so early in the case.

Plaintiffs do not meaningfully address this point since they claim defendants conceded balance of the equities. However, they cite to *Wisdom Import Sales Co. v Labatt Brewing Co.* for the proposition that there is irreparable harm when a shareholder's voting rights are restricted (NYSCEF # 29, citing 339 F3d 101 [2d Cir 2003]). The case is a useful exemplar if only because it is so different from the case at bar. There, the District Court and the Second Circuit enjoined a single corporate action or event that threatened one party's voting rights. Specifically, two beer companies owned a beer distribution company, with one company (plaintiff) appointing two directors and the other (defendant) appointing five (*Wisdom*, 339 F3d at 104-105). Per their agreements, any "fundamental matters" required a supermajority board vote, effectively giving plaintiff a minority veto (*id.*). All other matters only required a simple majority (*id.*). At some point, the beer distribution

**659292/2024   COLLE CAPITAL PARTNERS I, L.P. ET AL vs. AUTOMATON, INC.**
**Motion No.  001**

Page 5 of 6

company was weighing whether to integrate other beer brands (*id.* at 106-107). The board voted 4-2 in favor of integration, with plaintiff's directors opposed and one director seat unfilled (*id.* at 106). Plaintiff argued the integration was a fundamental matter and therefore could not pass without a supermajority (*id.* at 107). The District Court and the Second Circuit agreed and granted an injunction against the integration (*id.* at 113, 115).

The critical difference between *Wisdom* and the present case is that the court in *Wisdom* enjoined a single action or event—the brand integration. By contrast, plaintiffs here ask to enjoin *all* Automaton business unless plaintiffs get a seat at the table. The harms simply cannot be compared.

### Conclusion

For the reasons above, it is hereby

ORDERED that plaintiffs' motion for preliminary injunction is denied; and it is further

ORDERED that counsel for defendant shall serve a copy of this order with notice of entry upon plaintiff and the Clerk of the Court within ten days of the date of this order.

_____
**4/25/2025**
**DATE**

_____
**MARGARET A. CHAN, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | X | DENIED | | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**659292/2024   COLLE CAPITAL PARTNERS I, L.P. ET AL vs. AUTOMATON, INC.**
**Motion No.  001**

Page 6 of 6

[* 6]