■ NEW YORK CITY OFF-TRACK BETTING CORPORATION, Respondent, v NEW YORK RACING ASSOCIATION, INC., Appellant. [673 NYS2d 387] —Order, Supreme Court, New York County (Karla Moskowitz, J.), entered on or about November 26, 1997, which, *inter alia*, granted petitioner's motion for a preliminary injunction enjoining respondent from withdrawing or disrupting the simulcast signal it provides to petitioner, unanimously reversed, on the law, without costs, and the preliminary injunction is vacated.

Respondent New York Racing Association, Inc. (NYRA) is a nonprofit association incorporated under Racing, Pari-Mutuel Wagering and Breeding Law § 202, which conducts horse racing and wagering at Belmont, Aqueduct and Saratoga Racetracks. New York City Off-Track Betting Corporation (OTB) is a statutorily created public-benefit corporation that operates an off-track wagering system on horse races (*see*, Racing, Pari-Mutuel Wagering and Breeding Law § 601 *et seq.*), including races held at NYRA tracks. Through a series of written agreements, the latest in January 1996 (1996 Agreement), NYRA sold its live simulcast signal of races to OTB, which used the transmission in its branches (known as parlors), teletheaters and for "in-home" cable television viewing. The 1996 Agreement was scheduled to expire according to its terms on June 1, 1996, but was extended by the parties from time to time pursuant to letter agreements. The instant dispute arose when NYRA sought a substantial increase, over 200% according to OTB, in the amount OTB should pay for the simulcast signal.

NYRA responds that its provision of simulcasting to OTB outlets significantly decreases its own revenues, since bettors simply watch the races and make bets at OTB parlors instead of going to the race track.

As the last letter agreement was about to expire on November 12, 1997, the parties exchanged several proposals for a new agreement, none of which was mutually acceptable. On November 12, NYRA tersely rejected OTB's latest proposal and made no counter-proposal. On November 13, NYRA cut the simulcast signal provided to OTB without prior warning. That same day, OTB sent a letter to NYRA and the New York State Racing and Wagering Board (Board),[1] purportedly invoking the binding arbitration mechanism in Racing, Pari-Mutuel Wagering and Breeding Law § 1013, and demanding that NYRA immediately restore the signal under the terms of the pre-existing 1996 Agreement pending the outcome of the arbitration (Racing, Pari-Mutuel Wagering and Breeding Law § 1013 [1] [c]). In its letter, OTB further requested mediation of the dispute concerning in-home simulcasting pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 1003 (1) (a).

On November 14, 1997, the Board sent a letter to NYRA stating that "binding arbitration procedures are being initiated" pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 1013, and that NYRA was required to restore the simulcast signal to OTB under the preexisting terms and conditions pending the outcome of the arbitration. The Board's letter further stated that since NYRA had failed to comply with the 45-day notice of termination provision in Racing, Pari-Mutuel Wagering and Breeding Law § 1003, it was therefore being directed to continue with the in-home simulcasting arrangement pending the Board's mediation of a replacement agreement. Pursuant to the Board's order, NYRA restored the signal to OTB on the afternoon of November 14.

Nonetheless, on November 14, OTB moved by order to show cause for a temporary restraining order (TRO) to enjoin NYRA from disrupting the simulcast signal pending the outcome of the arbitration. OTB's accompanying petition requested a preliminary and permanent injunction, and included causes of action under Racing, Pari-Mutuel Wagering and Breeding Law § 1013 to compel NYRA to arbitrate the dispute over a new agreement, and under Racing, Pari-Mutuel Wagering and Breeding Law § 1003 to require NYRA to comply with that

1. The Board has "general jurisdiction over all horse racing activities and all pari-mutuel betting activities, both on-track and off-track, in the state" (Racing, Pari-Mutuel Wagering and Breeding Law § 101 [1]).

section's requirement that 45 days' notice be given before an agreement for in-home simulcasting could be terminated. After a brief hearing, during which counsel for NYRA stated NYRA's intention to fully comply with the Board's injunction order (although he would not unequivocally rule out a further interruption of the signal), the IAS Court granted the TRO in order to preserve the status quo.

On November 17, 1997, NYRA provided OTB with notice pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 1003 of its intention to terminate the in-home simulcast signal, while simultaneously reserving its right to challenge the applicability of the 45-day notice provision.

On November 26, 1997, the IAS Court held a hearing on OTB's motion for a preliminary injunction, at the conclusion of which it granted injunctive relief pursuant to CPLR 6301 and 7502 (c). The court ruled that under CPLR 7502 (c), an injunction in aid of arbitration was appropriate because any ultimate arbitration award might be rendered ineffectual unless an injunction were issued. The court stated that if NYRA were to arbitrarily cut off the simulcast signal, money damages would be inadequate to measure OTB's losses, which would include customer good will. The court further ruled that the traditional prerequisites for a preliminary injunction—the likelihood of the movant's success on the merits, irreparable injury in the absence of an injunction and a balancing of the equities in the movant's favor—had been satisfied. As to the relief granted, the court essentially continued the TRO, enjoining NYRA from disrupting simulcasting to branches and teletheaters pending the conclusion of the arbitration, with the terms of the 1996 Agreement remaining in effect.

By letter dated December 12, 1997, NYRA informed the Board that pursuant to Racing, Pari-Mutuel Wagering and Breeding Law § 1013 (1) (c) (ii), it was refusing to enter into binding arbitration. On December 29, 1997, the Board wrote to both parties "in anticipation of the forthcoming arbitration" between NYRA and OTB, and reminded NYRA that "there must be a continuity of the simulcast signal to all branches and teletheaters, based on the pre-existing terms and conditions, pending the outcome of the arbitration."

On or before January 2, 1998, NYRA informed OTB that pursuant to the expiration of the 45-day notice period, it intended to cut the in-home simulcast on January 2. The parties appeared for argument before the IAS Court on January 2, after which the IAS Court agreed with OTB that such termination was not permissible under its previous November 26 and

December 8 injunction orders. The court warned NYRA that any violation could subject it to contempt proceedings.

On appeal, NYRA argues that the court erred in implicitly ruling that Racing, Pari-Mutuel Wagering and Breeding Law § 1013 mandated compulsory arbitration of this dispute with OTB. While this claim may well have merit, the issue of whether arbitration is statutorily required is not directly before us on appeal. Neither the November 26 order nor the December 8 order compelled or otherwise directed NYRA to arbitrate this dispute, although the terms of the injunction clearly contemplated a pending arbitration proceeding (NYRA "is hereby enjoined, pending the conclusion of the arbitration procedures commenced by the [Board]"). Although OTB did request an order compelling arbitration in its petition, the request for that relief was neither granted nor denied in the court's orders. Thus, even though the parties vigorously dispute on appeal whether the arbitration initiated by the Board was proper, we do not rule on this issue in the absence of determination from the IAS Court (see, CPLR 7503 [a], [b]).[2]

We address only NYRA's arguments challenging the injunctive relief itself. The court relied on both CPLR 7502 (c) and 6301 in granting the preliminary injunction. CPLR 7502 (c) permits injunctive relief in connection with an arbitration "only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual" without the injunction (see, Matter of H. I. G. Capital Mgt. v Ligator, 233 AD2d 270, 271; Matter of Guarini [Severini], 233 AD2d 196, lv denied 90 NY2d 802; see also, Salvano v Merrill Lynch, Pierce, Fenner & Smith, 85 NY2d 173, 181). The arbitration award sought by OTB—a new simulcasting agreement whose terms and conditions are economically acceptable to OTB—would not be rendered ineffectual if an injunction is not granted. While termination of the simulcast signal in the interim may result in lost revenues to OTB, there is no evidence that OTB will go out of business. Moreover, at present, there is no indication that NYRA will refuse to comply with any order or arbitration award issued by the Board (see, Matter of Hill v Reynolds, 187 AD2d 299, 300-301). While NYRA has interposed a legal challenge to the Board's authority to direct it to arbitration, it has

2. Since there is no court order directing NYRA to arbitrate, NYRA's motion submitted to this Court to stay the arbitration pending this appeal is misplaced. A Justice of this Court previously granted an interim stay of the arbitration pending consideration by the full Bench, but without prejudice to an application by either party for further relief from the Board. We now deny the application for a stay, again without prejudice to any application for relief by either party to the Board or the IAS Court.

faithfully adhered to the Board's direction to restore the signal until the legal question is resolved.

OTB has also failed to establish its entitlement to injunctive relief under CPLR 6301. "A preliminary injunction may be granted under CPLR article 63 when the party seeking such relief demonstrates: (1) a likelihood of ultimate success on the merits; (2) the prospect of irreparable injury if the provisional relief is withheld; and (3) a balance of equities tipping in the moving party's favor (*Grant Co. v Srogi*, 52 NY2d 496, 517)." (*Doe v Axelrod*, 73 NY2d 748, 750.)

OTB has failed to demonstrate a likelihood of success on the merits of the first cause of action seeking to compel NYRA to arbitrate this dispute under Racing, Pari-Mutuel Wagering and Breeding Law § 1013. Racing, Pari-Mutuel Wagering and Breeding Law § 1013 (1) provides that whenever an applicant for a written simulcasting agreement claims that such agreement "has been unreasonably refused, declined or denied, or offered for consideration that is unreasonable * * * the terms and conditions and consideration to be paid for such proposed simulcasting shall be determined by binding arbitration." However, the statute also contains an "opt-out" provision, which states that within 30 days after receiving notice from the Board that an arbitration is being initiated against it, "the track may refuse to enter into any such arbitration procedures by notifying the board [and] [u]pon such notification, the board shall authorize the applicant to enter into an agreement to receive a simulcast signal from another track within the state" (Racing, Pari-Mutuel Wagering and Breeding Law § 1013 [1] [c] [ii]). As this opt-out provision undermines OTB's assertion that arbitration is compulsory under the statute, it is unclear whether OTB will succeed in compelling arbitration.

Furthermore, since Racing, Pari-Mutuel Wagering and Breeding Law § 1003 expressly states that the arbitration procedures in section 1013 "shall not apply" to in-home simulcasting agreements (Racing, Pari-Mutuel Wagering and Breeding Law § 1003 [1] [a]), the dispute over in-home simulcasting is clearly not arbitrable.

Nor has OTB demonstrated a clear right· to relief on its second cause of action under Racing, Pari-Mutuel Wagering and Breeding Law § 1003 (1) (a). The 45-day notice provision in section 1003 (1) (a) applies only where one party "elect[s] to terminate such agreement." NYRA argues that it did not terminate the simulcasting agreement; rather, the agreement simply expired according to its terms. Thus, notwithstanding the Board's view, it has not been clearly demonstrated that

this section is applicable to the parties' agreement. In any event, NYRA ultimately provided the 45-day notice to OTB pursuant to the statute, and that period has since expired. The only additional relief afforded by section 1003 (1) (a) is the right of the non-terminating party to "request the board to mediate between the parties" a new agreement. The Board has accepted OTB's request to mediate the in-home simulcasting dispute, but NYRA has declined to participate. As OTB has no further rights under section 1003 (1) (a), OTB's petition has accomplished all it could and there is no chance of any further success on the merits.

Moreover, there has been no showing that OTB will be irreparably injured absent an injunction, since the injury alleged is pecuniary in nature, and may be adequately compensated by money damages (*SportsChannel Am. Assocs. v National Hockey League*, 186 AD2d 417, 418; *Mr. Dees Stores v A.J. Parker, Inc.*, 159 AD2d 389). We are not convinced that any potential damages would be too difficult or speculative to calculate (*SportsChannel Am. Assocs. v National Hockey League, supra*; *Scotto v Mei*, 219 AD2d 181, 184).

Lastly, in this commercial dispute between two State-authorized entities, we believe that the equities are equally balanced (*see, Somers Assocs. v Corvino*, 156 AD2d 218, 219-220). While OTB predicts drastic losses if no injunction is issued, NYRA's claims of lost customers and revenues are what precipitated this dispute in the first place.

Accordingly, since OTB has failed to establish its right to injunctive relief under CPLR 7502 (c) or 6301, we vacate the preliminary injunction. Concur—Ellerin, J. P., Nardelli, Mazzarelli and Andrias, JJ.

