■ In the Matter of NEW YORK RACING ASSOCIATION, INC., Respondent, v MICHAEL J. HOBLOCK, JR., et al., Appellants. [704 NYS2d 52] —Judgment, Supreme Court, New York County (Ira Gammerman, J.), entered September 29, 1998, which granted the petition, declaring that respondent Racing and Wagering Board has no power to authorize respondent New York City Off-Track Betting Corporation (OTB) to provide in-home simulcasts of out-of-State thoroughbred races for the purpose of telephone pari-mutuel wagering while in-State races are being conducted by petitioner New York Racing Association, and which denied respondents' cross-motion to dismiss the petition, unanimously affirmed, without costs.

In this proceeding, petitioner New York Racing Association (NYRA) sought to vacate an order of respondent New York State Racing and Wagering Board that permitted respondent OTB to transmit, in-home over the Crosswalks cable network channel, live-call broadcasts (audio only) and a delayed video replay of races run at out-of-State tracks. NYRA complained that OTB was accepting telephone wagers on these races at a

time when it was conducting thoroughbred racing at Belmont Park and therefore exceeded the authority granted to it by section 1002 of the Racing, Pari-Mutuel Wagering and Breeding Law. It is NYRA's position that during any period when in-State thoroughbred racing is being conducted, the statute permits wagering only where the out-of-State race is deemed to be "of special interest" or wagers are accepted "with NYRA's consent" (citing Racing, Pari-Mutuel Wagering and Breeding Law § 523 [6] [a]). Supreme Court agreed, reasoning that this provision should be read to limit such wagering as is authorized on out-of-State races by article X of the Racing, Pari-Mutuel Wagering and Breeding Law.

We note that article X was enacted in 1984 for the stated purpose of allowing, on an experimental basis, the simulcasting of horse races and pari-mutuel betting thereon with the intent to promote the growth of the racing industry and generate additional revenues, both for the industry and government. To this end, the Legislature added provisions that permit telephone wagering (§ 1012) and the daily simulcasting and wagering, at OTB branch offices and simulcasting facilities, of up to two races conducted at out-of-State thoroughbred tracks (§ 1017). Both provisions are scheduled to expire on June 30, 2002. It is clear that a facility may accept wagers irrespective of whether it provides a simulcast; as provided by section 1017 (1) (e), nothing in that section is to be construed "to prohibit the acceptance of wagers on races conducted at out-of-state tracks without the display of the live simulcast signal *if authorized under any other provision of this chapter*" (emphasis added). Section 1012 authorizes in-home wagering on any races "offered" by OTB and the maintenance of "telephone betting accounts."

This Court discerns nothing in these sections that addresses the issue before us, which is whether the Board may direct OTB to provide some variation of in-home simulcasting of out-of-State races and permit OTB to accept telephone wagers on the outcome. The governing provision is Racing, Pari-Mutuel Wagering and Breeding Law § 1003, which states, in subdivision (1) (a): "Except as provided herein the board shall not approve any application to conduct simulcasting into individual or group residences, homes or common living areas for the purposes of or in connection with pari-mutuel wagering. The board may approve experiments involving simulcasting into private residences to be conducted jointly by regional off-track betting corporations and a non-profit racing association, a thoroughbred racing corporation or association or a harness

racing corporation or association provided (i) the simulcasting consists only of those races on which pari-mutuel betting is authorized for each of the contracting off-track betting corporations * * * Any agreement authorizing an in-home simulcasting experiment * * * may, and all its terms, be extended until June thirtieth, two thousand two, provided however, that any party to such agreement may elect to terminate such agreement upon conveying written notice * * * Any party to an agreement receiving such notice of an intent to terminate, may request the board to mediate between the parties such new terms and conditions in a replacement agreement between the parties as will permit continuation of the in-home experiment until June thirtieth, two thousand two."

NYRA's contention that the statute does not authorize in-home simulcasting "for purposes of pari-mutuel wagering" is contradicted by this provision, which permits in-home simulcasting "provided (i) the simulcasting consists only of those races on which pari-mutuel betting is authorized for each of the contracting off-track betting corporations" (Racing, Pari-Mutuel Wagering and Breeding Law § 1003 [1] [a]). This language would be superfluous if it were the Legislature's intent to permit in-home simulcasts of only those races on which telephone wagering was prohibited. However, it is equally clear that simulcasting "for the purposes of or in connection with pari-mutuel wagering" is permitted only on the basis of an agreement between OTB and the applicable racing corporation or association, in this case petitioner NYRA. While, as OTB points out, section 1012 of the statute does not place any specified limits on telephone wagering, it is authorized only for "races and special events offered by such corporation". By its terms, section 1003 restricts the offering of in-home simulcasting to "experiments" conducted by agreement, and in this case there is no agreement between OTB and petitioner NYRA permitting such "in-home experiment" to continue (see, New York City Off-Track Betting Corp. v New York Racing Assn., 250 AD2d 437).

Respondents maintain that the simultaneous transmission of audio without the video portion of the signal does not constitute a "simulcast," within the meaning of the statute, which provides, " 'Simulcast' means the telecast of live audio and visual signals" (Racing, Pari-Mutuel Wagering and Breeding Law § 1001 [a]). This is correct. However, it does not invariably follow that a simultaneous audio-only broadcast is permissible. Given the public policy against gambling in this State (NY Const, art I, § 9; Penal Law art 225; Intercontinental Hotels

*Corp. v Golden*, 18 AD2d 45, 49, *revd on other grounds* 15 NY2d 9), the statute is subject to strict construction, and any activity not expressly authorized is prohibited. The language relied upon by respondents to support telephone wagering "without the display of the live simulcast signal" requires such wagers to be authorized "under any other provision of this chapter" (Racing, Pari-Mutuel Wagering and Breeding Law § 1017 [1] [e]). As respondents can point to no express authority in the governing statute for accepting telephone wagers on transmissions that are not simulcasts, as defined in section 1001 (a), such wagering is prohibited. This Court will not permit laws authorizing gambling to be extended, by implication, beyond what the Legislature has specified (*Intercontinental Hotels Corp. v Golden, supra*, at 49).

Finally, we note that Supreme Court properly concluded that the limited agreement reached between the parties does not render this appeal moot. A justiciable issue remains as to the activities authorized by statute that was not resolved by the parties' stipulation (*Matter of Rochester Tel. Corp. v Public Serv. Commn.*, 87 NY2d 17, 27-28). Concur—Nardelli, J. P., Tom, Lerner, Rubin and Saxe, JJ.