Dear Representative Stites,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask the following question:
Under the provisions of the Oklahoma Horse Racing Act ("theAct"), 3A O.S. 1991 Supp. 2000, §§ 200-209, is theOklahoma Horse Racing Commission empowered to authorize alicensed racetrack (which the Act refers to as an "organizationlicensee") to accept pari-mutuel wagers on previously run horseraces — races which are neither live races nor races beingtransmitted to the organization licensee at the time the liverace is being run at the host track?
 I. Introduction
¶ 1 As indicated by the material which accompanied your request, your question was prompted by the interest of some local businesses in introducing pari-mutuel wagering machines into this State, which would be used to place wagers on the outcome of previous horse races. The machine would use film archives of past races and provide players with some handicapping information to use in placing their wagers — though neither the location nor the date of the past race would be identified until after the gambling was completed. We are not asked today to pass on the legality of possessing such a device in Oklahoma, but are only asked to determine whether current law would permit pari-mutuel horse race wagering on other than live horse races, or races being transmitted to a racetrack at the time the live race is being run at the host track.
 II. Oklahoma's Pervasive Anti-Gambling Laws A. Specific Anti-Gambling Prohibitions
¶ 2 Because of the pervasive anti-gambling public policy of the State, with its broad prohibitions against commercial gambling and lotteries — which include any scheme which combines chance, consideration and prize — we begin any analysis of the legality of a gambling activity in Oklahoma with the understanding that all gambling, unless specifically permitted, is illegal. In prohibiting almost all forms of gambling, the criminal code of Oklahoma prohibits casino gambling and the ownership and use of gambling devices. The statutes specifically prohibit "poker, roulette, craps or any banking or percentage, or any gambling game played with dice, cards or any device, for money, checks, credits, or any representatives of value." 21 O.S. Supp. 2000, §941[21-941].
¶ 3 Also prohibited is the placing of a bet or the playing ofany game "whatsoever, for money, property, checks, credits or other representatives of value with cards, dice or any other device which may be adapted to or used in playing any game ofchance or in which chance is a material element." 21 O.S. 1991,§ 942[21-942] (emphasis added).
¶ 4 Further, the ownership of anything suitable to or used for gambling purposes or furniture or equipment used in a place conducted in violation of the gambling laws requires forfeiture of the equipment. Id. §§ 943, 960, 973(A).
¶ 5 Persons who permit gambling in their building or on their grounds, or knowingly lease their property for such purposes are also guilty of a crime. Id. §§ 956, 957. Leases of property for such purposes are also declared void under Oklahoma law. Id. § 958.
¶ 6 The criminal statutes of Oklahoma also provide that operating any house, room or place where any of the prohibited games are conducted or carried on is a felony. 21 O.S. Supp.2000, § 946[21-946]. More specifically, persons in charge of any cigar stand, hotel lobby, store, or like place that permits the playing of dice or any other games, schemes or devices of chance have committed a crime. 21 O.S. 1991, § 947[21-947]. The setting up, operation or conducting of slot machines is also prohibited.Id. § 970. In addition to slot machines, the anti-gambling statutes of Oklahoma also specifically prohibit punch boards and declare them to be a public nuisance. Id. §§ 971, 972, 973(A). Also outlawed are dealing in gambling devices, 21 O.S. Supp.2000, § 984[21-984], and possession of gambling devices. 21 O.S. 1991,§ 985[21-985].
¶ 7 Further, the installation of communication devices for gambling, 21 O.S. Supp. 2000, § 986[21-986](B), and the dissemination of gaming information is also outlawed. Id. § 987(B).
 B. The Broad Prohibitions Against Commercial Gambling and Lotteries Include Wagering On the Outcome of Horse Races
¶ 8 Under a broad definition "commercial gambling" is specifically prohibited. 21 O.S. Supp 2000, §§ 981[21-981](2), 982. The definition of "commercial gambling" is broad enough to include wagering on the outcome of horse races:
A. Commercial gambling is:
 1. Operating or receiving all or part of the earnings of a gambling place;
 2. Receiving, recording or forwarding bets or offers to bet or, with intent to receive, record or forward bets or offers to bet, possessing facilities to do so;
 3. For gain, becoming a custodian of anything of value bet or offered to be bet;
 4. Conducting a lottery or with intent to conduct a lottery possessing facilities to do so;
 5. Setting up for use or collecting the proceeds of any gambling device; or
 6. Alone or with others, owning, controlling, managing or financing a gambling business.
 B. Any person found guilty of commercial gambling shall be guilty of a felony and punished by imprisonment for not more than ten (10) years or a fine of not more than Twenty-five Thousand Dollars ($25,000.00), or by both such fine and imprisonment.
Id. § 982 (emphasis added).
¶ 9 Like Oklahoma's other anti-gambling laws, its anti-commercial gambling laws outlaw the use of property and premises for commercial gambling purposes. 21 O.S. 1991, §983[21-983](B).
¶ 10 A "lottery" which encompasses "any scheme for the disposal or distribution of property by chance among persons who have paid, or promised, or agreed to pay any valuable consideration," is also prohibited. 21 O.S. 1991, § 1051[21-1051]. In State ex rel.Draper v. Lynch, 137 P.2d 949 (Okla. 1943), the Oklahoma Supreme Court held that any scheme that includes three elements was a lottery. The three elements are:
1. Chance;
2. prize, and
3. consideration (money or something of value).
Id. at 953.
¶ 11 Wagering on the outcome of a horse race constitutes a lottery under this definition, because such wagering includes consideration — the money bet; chance — the outcome of the race; and prize — the winnings paid successful betters. As with other anti-gambling statutes, use of a premises for a lottery is prohibited, 21 O.S. 1991, § 1063[21-1063], and any property involved is subject to forfeiture. Id. § 1062.
 C. Two Limited Exceptions to Oklahoma's Anti-Gambling Laws
¶ 12 There are two limited exceptions to Oklahoma's anti-gaming policy.[1] The first is a limited raffle exception. Under the provisions of 21 O.S. 1991, § 1051[21-1051], a raffle may be conducted by: "(1) a bona fide resident merchant . . . acting in conjunction with the Chamber of Commerce or Commercial Club [with the merchant issuing] free of charge numbered tickets on sales of his merchandise," and "(2) a bona fide community chest welfare fund on a military post or reservation [which is permitted] to issue numbered tickets in conjunction with voluntary contributions to said fund," provided that no tickets may be sold or contributions received off the post or reservation. Id.
¶ 13 The second exception is pari-mutuel horse racingwagering. Both on track wagering, 3A O.S. Supp. 2000, §205.6[3A-205.6](A), and off-track, simulcast wagering are permitted. Id.
§§ 205.6a(A), 205.7(A) and 205.7a(A).
 III. Permitted Pari-Mutuel Horse Race Wagering On Live And Simulcast Horse Races
¶ 14 With this background on the pervasive anti-gambling nature of Oklahoma's criminal statutes, we look more specifically at gambling on horse races in Oklahoma. We first note that the criminal statutes at 21 O.S. Supp. 2000, § 991[21-991](A)(1) make it illegal, "[t]o bet or wager upon the result of any trial of speed or power of endurance of animals or beasts[.]" That statute, however, specifically indicates that such wagering is unlawful, "[e]xcept as provided for in the Oklahoma Horse Racing Act."Id. § 991(A); see 3A O.S. 1991 Supp. 2000, §§ 200 — 209. We thus look to the Act to see if the pari-mutuel wagering you inquire about — wagering on previously run horse races — is authorized under the Act.
¶ 15 At 3A O.S. Supp. 2000, § 205.6[3A-205.6], the Act permits organization licensees — licensed racetracks — to conduct pari-mutuel wagering on live horse races being conducted atlicensed racetracks. Subsection A of Section 205.6 specifically provides:
 Any organization licensee conducting a race meeting may provide places on the race meeting grounds at which it may conduct and supervise the pari-mutuel system of wagering on the horse races conducted by the organization licensee at the race meeting. No other place or method of betting, pool making, wagering, or gambling shall be used or permitted by the organization licensee. The pari-mutuel system of wagering shall be permitted only on horse races conducted at a racetrack where such pari-mutuel system of wagering is authorized pursuant to the provisions of the Oklahoma Horse Racing Act.
Id. (emphasis added).
¶ 16 Such wagers are also permitted at the off-track wagering parlors of licensed racetracks under Section 205.6a(A). Additionally, the Act permits pari-mutuel wagering on simulcasthorse races. Id. §§ 205.6a(A), 205.7(A), 205.7a(A).
¶ 17 First, at Section 205.7, the Act authorizes pari-mutuelwagering on out-of-state simulcast races:
 A. The Oklahoma Horse Racing Commission may authorize an organization licensee to accept wagers on the results of out-of-state full racing programs for simulcast races. . . .
Id. (emphasis added).
¶ 18 The original enactment of the Act did not permit acceptance of wagers of simulcast races on such a broad basis. Rather, the original law only authorized such wagers onout-of-state feature races having a gross purse of more thanOne Hundred Thousand Dollars ($100,000). 1983 Okla. Sess. Laws ch. 11, § 24(A).
¶ 19 Secondly, the Act, at 3A O.S. Supp. 2000, § 205.7a[3A-205.7a],
authorizes organization licensees — licensed race tracks — to accept wagers on the results of live races from sister Oklahomaracetracks simulcast to another Oklahoma racetrack, or to the sister racetrack's off-track wagering facility:
 A. Any organization licensee that accepts full-card out-of-state simulcast wagering at any time during a calendar year shall be required to televise to all other racetracks licensed by the Oklahoma Horse Racing Commission all of its live races, or the number of days of its live racing which is equivalent to the number of days of live racing conducted at the receiving track, whichever is less. Pari-mutuel wagering may be conducted on such races at all other racetracks licensed by the Oklahoma Horse Racing Commission and may be allowed at their in-state offtrack pari-mutuel wagering facilities or at any other racetrack or entity in another state or country. Money wagered on such races may be placed in separate or common pools as determined by rules of the Oklahoma Horse Racing Commission.
Id. (emphasis added).
¶ 20 In the horse racing industry, the term "simulcast" is generally understood to mean the telecasting of live audio and visual signals. Cf. New York Racing Ass'n v. Hoblock,704 N.Y.S.2d 52, 54 (N.Y.App.Div. 2000). Indeed, the definition of the term "simulcasting" in the Oklahoma Horse Racing Commission's Administrative Rules bears this out. At OAC 325:65-1-31.1, the Commission defines "simulcast" to mean "the live audio and visual transmission of a contest to another location for pari-mutuel wagering purposes." Id. (emphasis added).
¶ 21 The Act does not elsewhere authorize wagering on horse races; it only authorizes pari-mutuel wagering on live races
and simulcast races. The horse race wagering you inquire about fits into neither category, as you inquire about "pari-mutuel wagers on previously run horse races — races which are neither live races nor races being transmitted to the organization licensee at the time the live race is being run at the host track." Clearly, a previously run horse race is not a live horse race and thus the Act's authorization of acceptance of pari-mutuel wagering on live races would not authorize wagers on previously run races. Nor does the Act's authorization ofsimulcast wagering permit pari-mutuel wagers on previously run horse races. As noted above, simulcast wagering is wagering on the results of a live race which is televised to another licensed track, or that track's off-track betting facility. In those wagers, bets are placed prior to the start of the live race.
¶ 22 The gambling you inquire about is not simulcast wagering, as the wagering would not take place on a live horse race being run at a sister track with wagers accepted until the start of that live race. Rather, you inquire about wagering on races which have been run in the past. Such wagering is not permitted under current Oklahoma law. Accordingly, the Horse Racing Commission is not authorized to permit licensed racetracks to accept wagers on the results of previously run horse races.
¶ 23 It is, therefore, the official Opinion of the AttorneyGeneral that:
Because the Oklahoma Horse Racing Act, 3A O.S. 1991 Supp.2000, §§ 200-209, only empowers the Oklahoma Horse RacingCommission to authorize licensed racetracks — which the Actrefers to as "organization licensees" — to accept pari-mutuelwagers on live or simulcast horse races, the Act does not empowerthe Commission to authorize the acceptance of pari-mutuel wagerson previously run horse races.
W.A. DREW EDMONDSON Oklahoma Attorney General
NEAL LEADER Senior Assistant Attorney General
[1] For the purposes of the discussion here, charitable bingo and related charitable gaming are not discussed, as the legality of charity gambling is irrelevant to the legality of commercial gambling ventures.