[642 NYS2d 863]

John Scotto, Respondent, v Barbara Mei et al., Appellants.

First Department, April 30, 1996

**ANNOTATION REFERENCE**

See ALR Index under Bonds and Undertakings; Costs of Actions; Injunctions.

APPEARANCES OF COUNSEL

*Steven J. Kolleeny* of counsel *(Vaughn C. Williams* and *Joan K. Martin* on the brief; *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for appellants.

*Lawrence M. Sands* of counsel *(Herman Sands & Foster,* attorneys), for respondent.

## OPINION OF THE COURT

NARDELLI, J.

Plaintiff entered into a contract, called a "Consulting Agreement", with defendant 137 East 55th Street Restaurant Corp., which was executed by Armando Mei as President on June 30, 1995. In the Consulting Agreement, plaintiff, in essence, agreed to act as manager of a restaurant on the premises. Mr. Mei was in the hospital when he executed the agreement on behalf of the restaurant corporation and died the next month.

Plaintiff began this action for breach of contract and tortious interference with contractual relations, seeking money damages and specific performance. The Supreme Court granted plaintiff's motion for preliminary injunctive relief enjoining "all defendants" from selling, subletting or contracting for management of the restaurant premises unless a copy of the June 30, 1995 contract was incorporated in any such agreement. The nisi prius court's grant of such relief on the facts herein was an abuse of discretion. "Preliminary injunctions are * * * 'drastic' remedies which require a clear showing of likelihood of ultimate success on the merits, that the movant will suffer irreparable injury unless the relief sought is granted and that the balancing of the equities lies in favor of the movant. Proof establishing these elements must be by affidavit and other competent proof, with evidentiary detail. If key facts are in dispute, the relief will be denied (*Eljay Jrs. v Rahda Exports*, 99 AD2d 408)." (*Faberge Intl. v Di Pino*, 109 AD2d 235, 240.)

Plaintiff allegedly informed defendant Barbara Mei in discussions relating to a proposed Consulting Agreement that he had been convicted in California of a felony as the result of an inadvertent "mistake" on his part. Thereafter, defendant learned that plaintiff had been convicted twice in the State of California and that both convictions related to the operation of clubs selling food and liquor.

Section 102 (2) of the Alcoholic Beverage Control Law states, in pertinent part: "No person holding any license hereunder * * * shall knowingly employ in connection with his business

in any capacity whatsoever, any person, who has been convicted of a felony * * * who has not subsequent to such conviction received an executive pardon therefor removing any civil disabilities incurred thereby, a certificate of good conduct or other relief from disabilities provided by law, or the written approval of the state liquor authority permitting such employment".

Plaintiff asserts that defendants have attempted to "sensationalize" plaintiff's criminal record and that it is completely irrelevant to this action for specific performance. However, it is black-letter law that a contract entered into in violation of a statute is an unlawful undertaking and such an illegal contract cannot give rise to a viable cause of action (*Carmine v Murphy*, 285 NY 413, 416). As noted, the Consulting Agreement would, in essence, make the plaintiff the manager of the restaurant, and, in addition, give him a percentage of the gross revenues. Pursuant to Alcoholic Beverage Control Law § 100 (1), "No person shall * * * sell * * * any alcoholic beverage within the state without obtaining the appropriate license therefor". Further, Alcoholic Beverage Control Law § 111 provides: "A license issued to any person * * * for any licensed premises shall not be transferable to any other person * * * except in the discretion of the authority".

It is apparent that plaintiff was unable, at the time he allegedly contracted with the restaurant corporation, to fulfill the terms of the Consulting Agreement. The degree of control he was expected to exercise over the restaurant necessitated his inclusion on the license (*see*, Alcoholic Beverage Control Law § 111; *Matter of Dumbarton Oaks Rest. & Bar v New York State Liq. Auth.*, 58 NY2d 89), while his criminal history precluded any such inclusion. Section 111 was enacted to prevent persons ineligible to procure a license from operating a liquor business through another licensee (*Turgeon of Fla. v Orlando*, 92 AD2d 718).

Plaintiff asserts that the Consulting Agreement did not require that the restaurant have a liquor license. This may technically be true, but the possession of such a license would appear to be a *sine qua non* for the successful operation of a club and restaurant in midtown Manhattan. Plaintiff also asserts upon the appeal that he has now received permission from the New York State Liquor Authority to act as the "manager" of a New York City restaurant and nightclub (and moves to enlarge the Record to incorporate this approval). Of course, facts not before the IAS Court when it made its deci-

sion are not appropriately considered by us upon our review of that decision (*see, Sun Yau Ko v Lincoln Sav. Bank*, 99 AD2d 943, 944, *affd* 62 NY2d 938). In any event, plaintiff misapprehends the burden he bears to obtain the drastic relief he seeks. The salient fact is that there was (and is) a real dispute as to whether plaintiff would be able to obtain a license to dispense alcoholic beverages. Moreover, there are other sharp, factual disputes between the parties. Although the complaint alleges defendant Mei refused to honor the June 30th agreement before the action was commenced, defendants contend that the first time they became aware of the existence of that agreement was when the complaint was served upon them. Also, defendants assert that on June 30, 1995, Armando Mei was in the hospital, terminally ill with cancer, virtually unable to read and being given heavy doses of medication. This casts doubt upon the validity of the Consulting Agreement, allegedly executed by Mr. Mei at that time. When "key facts are in dispute, the relief will be denied" (*Faberge Intl. v Di Pino*, *supra*, at 240). Plaintiff has, therefore, failed to show that he has a clear likelihood of success on the merits.

Plaintiff also failed to show that he would suffer irreparable injury absent the grant of injunctive relief. If defendants contract with another party to manage the restaurant, assuming plaintiff is incapable of performing under the contract due to his legal status, plaintiff would not suffer *any* damages. Assuming, arguendo, that plaintiff did establish a clear likelihood of success on the merits, his assertion that the contract and real property associated with the contract are unique and thus, damages would be incapable of determination, is without merit. "Damages compensable in money and capable of calculation, *albeit* with some difficulty, are not irreparable" *SportsChannel Am. Assocs. v National Hockey League*, 186 AD2d 417, 418 [emphasis in original]). Further, the terms of the June 30th agreement, if upheld, make any damages capable of computation, and "neither the need to project into the future nor the contingencies * * * render inadequate the remedy of damages" (*Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d 186, 195).

The last prong of the tripartite test for issuance of a preliminary injunction, i.e., that a balancing of the equities tips in the requesting party's favor (*see, Albini v Solork Assocs.*, 37 AD2d 835), was also not met by the plaintiff. As noted, plaintiff will not suffer irreparable injury absent the relief requested. However, defendants would suffer such irreparable injury

because of the preliminary injunction. Thus, defendant AL-BRM, which owns the restaurant premises, and is *not* a signatory to the June 30th agreement, could not engage in any realistic agreement for the use of the premises with the existence of the preliminary injunction granted by the IAS Court.

Finally, we note that the IAS Court erred in granting a preliminary injunction, with serious financial consequences for defendants, without requiring the posting of an undertaking by plaintiff. CPLR 6312 (b) provides that "prior to the granting of a preliminary injunction, the plaintiff *shall* give an undertaking in an amount to be fixed by the court" (emphasis added). While the plaintiff terms this point "moot", since he has posted an undertaking pursuant to an order of this Court, the failure of the IAS Court to require such an undertaking can have serious ramifications if it is "finally" determined that plaintiff was not entitled to the injunction. "The function of CPLR 6312 (b) is to provide a limited remedy to a defendant who has suffered damage from an erroneously issued preliminary injunction. *The remedy is limited in most cases to the amount of the undertaking* since any independent claim for damages is contingent upon proof that the plaintiff acted with malice in obtaining the injunction." (7A Weinstein-Korn-Miller, NY Civ Prac ¶ 6312.09 [emphasis added].)

Accordingly the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered September 20, 1995, which granted plaintiff's motion for a preliminary injunction, should be reversed, on the law and facts, with costs and disbursements, and the motion denied.

Motion for a stay is denied as moot.

ELLERIN, J. P., WALLACH, ROSS and TOM, JJ., concur.

Order, Supreme Court, New York County, entered September 20, 1995, reversed, on the law and the facts, with costs and disbursements, and plaintiff's motion for a preliminary injunction is denied. Motion for a stay is denied as moot.