*863 OPINION OF THE COURT
Carolyn E. Demarest, J.
In this action seeking damages for breach of contract, plaintiffs Kevin Sirota and AC-Delco Cars, Inc. (AC Delco) move for summary judgment in their favor in the amount of $9,415. Defendant Champion Motor Group, Inc. cross-moves for summary judgment dismissing the complaint against it.
Champion has the registered trade name of Bentley Long Island, and Bentley Long Island is a registered new motor vehicle dealer for the sale of Bentley vehicles. Sirota is a manager at AC Delco, which is a licensed used car dealership in Brooklyn, New York. AC Delco is not a registered new motor vehicle dealer for the sale of Bentley vehicles.
On March 26, 2007, Sirota called Champion, and entered into an agreement with it to purchase a new 2007 Bentley Continental GTC vehicle from it for $212,515. Regina Posillico, the salesperson for Champion, then faxed a purchase order form to Sirota at his place of business, AC Delco, and requested that he sign it and fax it back. Sirota executed the purchase order form in his own name, and it is his signature which appears above the purchaser’s signature line. The purchase order form also lists Sirota as the purchaser. In addition, the purchase order form sets forth the purchase price as being $212,515 and states that the Bentley is a “new” car. While the purchase order form shows a deposit by Sirota of $2,000, it is undisputed that Sirota’s credit card was never charged for the deposit.
According to Posillico, she believed that Sirota was purchasing the Bentley vehicle in his own name because Sirota had told her that he was the one purchasing it. When Posillico asked Sirota to provide her with a copy of his driver’s license so that the transaction between Sirota and Champion could be completed, he, instead, gave her paperwork from AC Delco, which (as noted above) is a used car dealership. Posillico then brought the AC Delco paperwork to Louis Bastone, the sales manager for Champion.
According to Bastone, he then spoke to Sirota and asked him if he was purchasing the Bentley vehicle, and Sirota told him that AC Delco was the purchaser and that AC Delco would be selling the Bentley vehicle to its own customer. As a result, Bastone informed Sirota that Champion would not sell AC Delco the Bentley vehicle. Bastone explained that he could not do so because Champion was prohibited, by virtue of its dealer agree *864 ment with Bentley Motors, from selling a new Bentley to anyone other than a registered new motor vehicle dealer for the sale of Bentley vehicles. He further explained that Champion was prohibited by law from selling a new motor vehicle to AC Delco due to the fact that AC Delco did not have a certificate of registration as a new motor vehicle dealer. Bastone claims that he advised Sirota that he could, individually, purchase the Bentley vehicle, but that AC Delco could not purchase it. Bastone states that he also offered AC Delco the opportunity to purchase a used Bentley vehicle. Sirota declined to purchase the new Bentley vehicle in his own name, and also elected not to purchase a used Bentley vehicle from Champion.
Subsequently, AC Delco purchased a used 2007 Bentley GTC vehicle (with an odometer reading of 190 miles) by a reassignment of a certificate of ownership by a licensed New Jersey dealer, National Auto Dealers Exchange, at a wholesale auction. AC Delco paid $221,930 for that Bentley vehicle, $9,415 more than the $212,515 purchase price of Champion’s new Bentley vehicle.
On March 29, 2007, Sirota and AC Delco filed this action against Champion. The complaint asserts causes of action for breach of contract and fraud. Champion has interposed an answer to the complaint.
Sirota and AC Delco, in support of their motion for summary judgment, assert that there was a contract between Sirota, on behalf of AC Delco, and Champion to purchase the 2007 Bentley vehicle for $212,515, and that Champion breached this contract by refusing to sell AC Delco the Bentley vehicle. They argue that since they were forced to pay $9,415 more than this agreed upon price to purchase the same make and model Bentley vehicle from National Auto Dealers Exchange, they are entitled to summary judgment in their favor in the amount of $9,415.
In opposition to the motion and in support of its cross motion, Champion contends that it had entered into the contract with Sirota, individually, and did not enter into a contract to sell the Bentley vehicle to AC Delco. Champion argues that AC Delco’s attempt to purchase the new Bentley vehicle was in violation of Vehicle and Traffic Law § 415 since AC Delco was not a new motor vehicle dealer.
Vehicle and Traffic Law § 415 (1) (a) defines a “dealer” as: “[A] person engaged in the business of buying, selling or dealing in motor vehicles . . . including] a ‘new motor vehicle dealer’ as defined by paragraph f of this subdivision.”
*865 Vehicle and Traffic Law § 415 (1) (f) defines a “new motor vehicle dealer” as:
“[A] dealer who engages in the activities described in paragraph a of this subdivision if such activities relate to new motor vehicles and if such dealer is party to a franchise, as the terms ‘new motor vehicle’ and ‘franchise’ are defined in section four hundred sixty-two of this title; provided, however, for purposes of this definition, a new motor vehicle shall include only those motor vehicles commonly classified as a passenger automobile [and certain other specified vehicles].”
Vehicle and Traffic Law § 462 (11) defines a “new motor vehicle” as: “[A] vehicle sold or transferred by a manufacturer, distributor or dealer, which has not been placed in consumer use or used as a demonstrator.”
Vehicle and Traffic Law § 415 (3) (a), in pertinent part, provides: “No person shall engage in business as a new motor vehicle dealer . . . unless there shall have been issued to him or her, for a particular make, a certificate of registration as a new motor vehicle dealer as provided in subdivision seven of this section . . . .”
Vehicle and Traffic Law § 415 (3) (b), in pertinent part, further provides: “No person shall engage in the business of selling new motor vehicles . . . unless there shall have been issued to him or her a certificate of registration as a new motor vehicle dealer or as a qualified dealer as provided in subdivision seven of this section.”
Vehicle and Traffic Law § 415 (7) (a) states that a new motor vehicle registration certificate should only be issued upon proof that:
“the applicant for a new motor vehicle dealer registration certificate is party to a franchise or franchises authorizing such applicant to sell or lease lines or makes of new motor vehicles which the applicant proposes to sell or lease from the locations described in the application for the sale or lease of such lines or makes.”
Vehicle and Traffic Law § 415 (16) (a) provides that the commissioner “shall assess civil penalties” on a person determined to have operated as a dealer without being registered as required by Vehicle and Traffic Law § 415 (3).
It is undisputed that AC Delco is a used car dealer and that the Bentley vehicle contracted for was a new car. Thus, AC *866 Delco had no authority to sell this new Bentley vehicle in its business operation and was explicitly prohibited from engaging in such sale without a certificate of registration as a new motor vehicle dealer (see Vehicle and Traffic Law § 415 [1] [f]; [3] [a], [b]; Genesee Regional Bank v Palumbo, 9 Misc 3d 823, 833 [2005]).
Sirota and AC Delco, in opposition to Champion’s cross motion, concede that Vehicle and Traffic Law § 415 prohibits AC Delco from selling a new car in New York State, and that if AC Delco intended to sell the Bentley vehicle in New York, then Champion would be entitled to summary judgment. They contend, however, that nothing in Vehicle and Traffic Law § 415 prohibits a used car dealer from purchasing a new car as long as the new car is not sold in New York. Sirota, in his reply affidavit, now asserts that AC Delco did not intend to sell the Bentley vehicle within the United States, but planned to purchase it for exportation to the Ukraine. He explains that AC Delco’s plan to do so involved first having the Bentley vehicle’s certificate of origin converted to a certificate of title, thereby “making” the Bentley vehicle a “used car,” and then transporting it to the Ukraine.
Sirota and AC Delco’s purported scheme to attempt to circumvent Vehicle and Traffic Law § 415 does not entitle them to enforce the contract with Champion. It is well settled that a contract which violates a prohibitory statute or which cannot be performed without violation of that statute is an unlawful undertaking and is illegal, void, and unenforceable (see KaiserFrazer Corp. v Otis & Co., 195 F2d 838, 843 [2d Cir 1952], cert denied 344 US 856 [1952]; Scotto v Mei, 219 AD2d 181, 183 [1996]; Robitzek v Reliance Intercontinental Corp., 7 AD2d 407, 409 [1959], affd 7 NY2d 1041 [I960]; Zindle, Inc. v Friedman’s Express, Inc., 258 App Div 636, 637 [1940]; Matter of Sanchez, 126 Misc 2d 199, 202 [1984]). Such an illegal contract cannot give rise to a viable cause of action (see Parpal Rest. v Martin Co., 258 AD2d 572, 573 [1999]; Scotto, 219 AD2d at 183). This is because a party “ ‘cannot ask a court of law to help [it] carry out [an] illegal object, nor can [it] plead or prove in any court a case in which [it], as a basis for [its] claim, must show forth [its] illegal purpose’ ” (Bonilla v Rotter, 36 AD3d 534, 535 [2007], quoting Stone v Freeman, 298 NY 268, 271 [1948]; see also Valenza v Emmelle Coutier, Inc., 288 AD2d 114 [2001]; Prins v Itkowitz & Gottlieb, 279 AD2d 274, 275 [2001]).
Additionally, agreements against public policy are illegal, void, and unenforceable, and courts will not recognize rights purport *867 edly arising from them (see Matter of New York State Correctional Officers & Police Benevolent Assn. v State of New York, 94 NY2d 321, 327 [1999]; City of New York v 17 Vista Assoc., 84 NY2d 299, 306 [1994]; Szerdahelyi v Harris, 67 NY2d 42, 48 [1986]; McConnell v Commonwealth Pictures Corp., 7 NY2d 465, 469 [I960]). Thus, the parties cannot make a binding contract in violation of a statute or public policy (see City of New York, 84 NY2d at 306; Szerdahelyi, 67 NY2d at 48; Valenza, 288 AD2d at 114; Scotto, 219 AD2d at 183).
Here, the enforcement of the contract in order to permit AC Delco to purchase the new Bentley vehicle would result in a used car dealer, who is prohibited from engaging in the sale of this new vehicle by Vehicle and Traffic Law § 415, doing so. While Sirota and AC Delco argue that they would have manipulated the sales documents to render the Bentley vehicle a “used” car and then sold the Bentley vehicle in the Ukraine, AC Delco (as alleged in the complaint) is organized and existing under the laws of New York with its principal place of business in New York. In addition, AC Delco would have entered into the contract in New York to sell the Bentley vehicle to a Ukraine buyer before exporting the Bentley vehicle to the Ukraine. Thus, the contract at issue is antagonistic to the interests of New York’s public policy and the enforcement of the contract would result in the circumvention of Vehicle and Traffic Law § 415. The court will not enforce a contract in violation of New York law and policy (see City of New York, 84 NY2d at 306; Szerdahelyi, 67 NY2d at 48; Valenza, 288 AD2d at 114; Scotto, 219 AD2d at 183).
Sirota and AC Delco also claim that Champion was aware that Sirota was purchasing the Bentley vehicle for AC Delco and that the faxes addressed to his attention at AC Delco show this. In response, Posillico, in her sworn affidavit, denies that she knew that AC Delco was the purchaser and specifically attests that she sent the faxes to AC Delco because Sirota told her to send them to his workplace. Only Sirota’s name and signature appear on the purchase order form which constitutes the contract between the parties. In any event, any initial awareness on the part of Champion as to plaintiffs’ intentions could not require it to complete or become a party to the perpetration of an illegal transaction. It is noted that Sirota and AC Delco do not dispute that the Bentley vehicle which they subsequently purchased for $221,930 was not a new vehicle.
Inasmuch as the contract for the sale of the Bentley vehicle was unenforceable, Sirota and AC Delco have no viable breach *868 of contract claim (see Bonilla, 36 AD3d at 535; Valenza, 288 AD2d at 114). Additionally, Sirota and AC Delco’s cause of action for fraud states no viable cause of action since the only fraud charged is the alleged breach of contract (see Schenkman v New York Coll. of Health Professionals, 29 AD3d 671, 672-[2006]). Therefore, since Champion has established a prima facie entitlement to judgment dismissing the complaint as a matter of law and no relevant triable issue of fact is raised herein, its cross motion for summary judgment must be granted and Sirota and AC Delco’s motion for summary judgment must be denied (see generally CPLR 3212 [b]; Alvarez v Prospect Hosp., 68 NY2d 320, 324-325 [1986]).
Accordingly, Sirota and AC Delco’s motion for summary judgment in their favor in the amount of $9,415 is denied, and Champion’s cross motion for summary judgment dismissing the complaint is granted.