Matter of People Care Inc. v City of New York Human Resources Admin. (2019 NY Slip Op 05756)





Matter of People Care Inc. v City of New York Human Resources Admin.


2019 NY Slip Op 05756


Decided on July 23, 2019


Appellate Division, First Department


Kahn, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 23, 2019
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Rosalyn H. Richter,J.P.
Sallie Manzanet-Daniels
Marcy L. Kahn
Ellen Gesmer
Jeffrey K. Oing,JJ.


109193/09 9023 

[*1]In re People Care Incorporated, doing business as Assisted Care, Petitioner-Respondent,
v
The City of New York Human Resources Administration, et al., Respondents-Appellants.



Respondents appeal from the order and judgment
(one paper) of the Supreme Court, New York County (Eileen A. Rakower, J.), entered February 5, 2018, inter alia, granting the petition, brought pursuant to CPLR article 78, seeking to annul respondents' October 20, 2008 audit which demanded recoupment of $6,998,432 from petitioner, and enjoining respondents from recouping those funds.




Zachary W. Carter, Corporation Counsel, New York (Eric Lee and Scott Shorr of counsel), for appellants.
Olshan Frome Wolosky LLP, New York (Thomas J. Fleming and Kerrin T. Klein of counsel), and Todd V. Lamb, New York, for respondent.



KAHN, J.


On this appeal, the issue presented is whether respondent The City of New York Human Resources Administration Department of Social Services (HRA) has the authority to audit and recover overpayments of funds provided pursuant to the Health Care Reform Act (HCRA) from personal care service providers such as petitioner People Care Incorporated d/b/a Assisted Care. For the reasons that follow, we hold that it does not.
FACTUAL AND PROCEDURAL BACKGROUND
HRA administers the Medicaid program in New York City. Since 1981, the New York State Department of Health (DOH) has authorized HRA to calculate general Medicaid reimbursement rates for personal care services using an Alternative Rate Methodology
(ARM) (18 NYCRR § 505.14[h][7][v]), in contrast to the standard "cost-based" methodology, used state-wide, which takes into account the provider's actual cost of providing personal care services. Under the ARM, general Medicaid payments are made to a provider based upon the provider's projected expenses. To the extent that a provider's projected expenses exceeds its actual costs, resulting in an overpayment of general Medicaid funds to the provider, HRA may recoup any such overpayment through an annual fiscal audit, which it conducts with respect to every New York City based provider in the Medicaid program. DOH's approval of the use of the ARM by HRA is conditioned upon HRA's conducting these annual audits, and any excess general Medicaid funds recouped through this audit process are returned to the City of New York and credited to the federal and state governments.
On November 1, 2001, People Care entered into a contract with HRA. Under the terms of the 2001 contract, People Care agreed to provide personal care services in New York City, and HRA agreed to pay People Care for its services using general Medicaid funds. Section 3.4 of the 2001 contract provided that the rate of payment to People Care was to be calculated by taking into account, among the separate components comprising the rate, "direct" wages for People Care's home attendants, "indirect" wages for its administrative staff and a "profit" for People Care. Section 3.2(A)(ii) of the 2001 contract provided that if the amount of the payments made by People Care to its home attendants was less than the amount of the payments made to People Care by HRA, then HRA had "the right to recoup such unspent portion of those funds" from People Care. Section 4.2(D) provided that HRA "may direct [People Care] . . . to return to [HRA] any such Funds used in violation of any provision of this Agreement." Section 9.1(F) referred to the "right" of HRA, or its "designees," to "conduct[] fiscal audits or other evaluations."
Significantly, section 3.1(D) of the 2001 contract provided that "[i]n the event that [DOH's] method of reimbursing [People Care] is changed during the term of this Agreement, this Agreement shall be modified to reflect the new method of reimbursement."
In 2002, the New York State Legislature enacted Public Health Law § 2807-v(1)(bb), which became effective April 1, 2002. That statute established the HCRA Worker Recruitment and Retention Program, a Medicaid reimbursement program, to promote the recruitment and retention of non-supervisory personal care service workers, under which funds that had accumulated in the state's tobacco control and insurance initiatives pool were to be provided by the DOH Commissioner "for local social services districts" to be "distributed in accordance with memorandums of understanding to be entered into between the state of New York and such local social services districts for the purpose of supporting the state share of adjustments to Medicaid rates of payment for personal care services" (Public Health Law § 2807-v[1][bb][i]). The statute further authorized the DOH Commissioner "to audit each [personal care service] provider to ensure compliance with the HCRA and [to] recoup any funds determined to have been used for purposes other than recruitment and retention of non-supervisory personal care services workers" in addition to imposing any other penalties provided by law (Public Health Law § 2807-v[1][bb][iii]).
On November 15, 2002, pursuant to Public Health Law § 2807-v(1)(bb)(i), DOH and HRA, as the "local social service district" for New York City, entered into a memorandum of understanding (MOU). The MOU reflected that, pursuant to Public Health Law § 2807-v(1)(bb), "[DOH] may audit each provider receiving [an HCRA] rate adjustment to ensure compliance with the provisions of [that statute]" and describing how DOH would compute the rate [*2]adjustments. The MOU further provided that DOH was to "compute Medicaid rate add-ons for the April 1, 2002 - December 31, 2002 rate period and for the 2003 . . . rate period[] for the purpose of allocating Medicaid rate adjustments as provided in PHL § 2807-v(1)(bb)." The sole provision of the MOU that set forth a role for HRA in the HCRA funds allocations process was that issuance of HCRA rate adjustments to personal service care providers is conditioned upon HRA's "prior receipt from each such provider of a written certification, in a form determined by [DOH], attesting that such funds will be used solely for the purpose of recruitment and retention of non-supervisory personal services workers or any worker with direct patient care responsibility." The MOU also included a merger clause, by which "the parties acknowledge[d] that [the MOU] constitute[d] the entire understanding reached between the parties and that there [were] no other agreements between the parties that . . . affect[ed] or interfere[d] with the parties' full compliance with the terms of [the MOU]."
By letter dated January 28, 2003, HRA notified People Care that, as a result of the newly established HCRA program, DOH had approved an upward adjustment of contractual payments for "direct" and "indirect" labor, retroactively effective April 1, 2002. People Care later accepted these additional HCRA payments from HRA.
In 2007 and 2008, HRA audited People Care and, on October 20, 2008, demanded recoupment of $6,998,432 in HCRA payments People Care had received in 2003 and 2004. People Care objected to the recoupment demand and appealed it, primarily on the ground that HRA had no authority to recoup the HCRA funds in question.
In a letter to Michael A. Porcello, Senior Attorney at HRA, dated February 24, 2009, Robert A. Veino, a DOH Associate Attorney, wrote that he was responding to Porcello's letter to him dated December 23, 2008 "in which [Porcello] request[ed] [DOH's] position with regard to Medicaid payments for personal care services providers (PCS) in the 2003 and 2004 period made to PCS providers for the purpose of promoting the recruitment and retention of PCS workers." In his letter to Porcello, Veino opined:
"[The provisions of Public Health Law § 2807-v(1)(bb)] . . . give [DOH] specific authority to confirm the proper use of [HCRA] funds via audit and to recoup any funds which are found not to be used for the authorized purpose of recruitment and retention. . . . [HCRA] payments are in all legally relevant respects Medicaid payments to Medicaid providers of services and are thus subject to the same processes and audit procedures applicable to any other Medicaid payments to such providers. The requirement that [HCRA] funds be expended for a particular purpose "should be generally understood as imposing an additional requirement with regard to such payments, not as supplanting or super[s]eding pre-existing requirements generally applicable to such Medicaid payments to such providers."
In an "Appeal Determination Letter" dated March 11, 2009, HRA Agency Attorney Porcello notified People Care of HRA's determination that HCRA funds are Medicaid revenues and that authority to recover such funds is "conferred upon HRA as the duly constituted New York City Social Services District."
In June 2009, People Care commenced the instant article 78 proceeding to annul HRA's October 20, 2008 recoupment demand and its March 11, 2009 appeal determination. People Care further sought to enjoin HRA from recouping the HCRA funds demanded in the audit. HRA cross moved to dismiss the petition. Supreme Court granted HRA's motion and dismissed the petition, and People Care appealed.
On the prior appeal in this case, this Court held that "[n]either [Public Health Law § 2807-v(1)(bb)(iii)] nor the [MOU] between . . . DOH and HRA delegates [the] power [to recoup HCRA funds] to HRA," but further determined that remand was warranted to develop the record as to whether DOH authorized HRA to recoup funds awarded to People Care on some other basis, such as pursuant to Social Services Law §§ 364-a and 368-c(2) (see Matter of People Care Inc. v City of N.Y. Human Resources Admin., 89 AD3d 515 [1st Dept 2011] [People Care I]).
It is uncontroverted that following this Court's issuance in 2011 of its decision in People Care I, there was no further litigation of this matter until late 2016, when HRA requested that Supreme Court restore this case to the calendar. On July 13, 2017, HRA filed its verified answer to People Care's article 78 petition. In his affidavit in support of the answer, sworn July 12, 2017, John E. Ulberg, Jr., DOH's Medicaid Chief Financial Officer, opined that "HCRA funds used to adjust rates for personal care service worker recruitment and retention are in all legally relevant respects Medicaid funds, and are subject to the same rules and procedures applicable to all other Medicaid funds." Ulberg further opined that these rules and procedures included "the authority of HRA, as the primary rate-setting authority for Medicaid personal care service rates in New York City, to audit and recoup excess HCRA funds paid to [HCRA] Program providers." He set forth his view that although Public Health Law § 2807-v(1)(bb) authorized DOH to audit and recoup any earmarked funds unspent or used for purposes other than recruitment and retention, the statute "was intended to supplement, rather than supersede, HRA's existing auditing and recoupment authority regarding overpayments" of funds for personal care services." He added that DOH "does not perform fiscal audits of HRA's contracts with personal care services providers" because HRA "is authorized to and does conduct annual audits with respect to those contracts."
II. DISCUSSION
On remand, Supreme Court correctly found that HRA failed to demonstrate that DOH had delegated auditing and recoupment responsibilities to it under the HCRA. As previously stated, in People Care I, this Court held that neither Public Health Law § 2807-v(1)(bb) nor the MOU between DOH and HRA delegated DOH's auditing and recoupment powers with respect to HCRA funds to HRA. In doing so, we also necessarily rejected HRA's current argument that HCRA funds are the same as, or an earmarked portion or subset of, Medicaid funds (see People Care I, 89 AD3d at 516). Had this Court, in determining People Care I, regarded HCRA funds as the same as general Medicaid funds, its remand of this case for development of the record as to whether HRA has a basis of authority other than the HCRA or the MOU would have been wholly unnecessary.
Furthermore, on remand, Supreme Court correctly held that while Social Services Law § 364-a(1) confers upon DOH the "authority to delegate responsibility to other state departments and agencies," it must do so in conjunction with "entering into memoranda of understanding" with any such other agencies (Social Services Law § 364-a[1]) and that here, while DOH entered into the MOU with HRA, the MOU does not include language delegating DOH's authority to audit and recoup HCRA funds to HRA. Supreme Court also correctly found that Social Services Law § 368-c(4) provides that, in order for DOH to delegate the auditing responsibilities conferred upon it by Social Services Law § 368-c(1) to any other agency or agencies, an "interagency agreement[] . . . delineat[ing] the respective responsibilities of [DOH] and other governmental agencies" is required (Social Services Law § 368-c[4]). Here, the sole interagency agreement in question is the aformentioned MOU, which is entirely devoid of any language delegating auditing and recoupment powers to HRA, and by virtue of its merger clause, constitutes the entire agreement by DOH and HRA on the subject of HCRA payments, audits and recoupment. Thus, neither of these Social Services Law sections support HRA's position in this case.
Contrary to the dissent's view, the references to "supporting the state share of adjustments to Medicaid rates of payment for personal care services" in Public Health Law § 2807-v(1)(bb)(i) and the MOU's repeated characterization of the new HCRA funds as "Medicaid rate adjustments" do not compel the conclusion that HCRA funds are to be treated as general Medicaid funds earmarked for a special purpose or, alternatively, as a subset of general Medicaid funds. The determinative issue on this appeal is not whether the HCRA funds were denominated as "Medicaid rates of payment" or "Medicaid rate adjustments" in the statute and the MOU. Rather, the issue presented here is whether, under the terms of the 2001 contract, Public Health Law § 2807-v(1)(bb)(i) and the MOU superseded the provisions of that contract as to the auditing and recoupment of HCRA funds. As explained below, the contract itself contemplated the possibility of changes in the method of reimbursement during the term of the contract and provided for modification of its own terms accordingly. Moreover, the conclusion that HCRA funds are to be treated as general Medicaid funds is inconsistent with this Court's holding in People Care I as explained above.
HRA's alternative claim that it retained auditing responsibilities with respect to HCRA funds under its broad authority to audit Medicaid funds is unavailing. Initially, as reflected in the 2001 contract between HRA and People Care, general Medicaid funds were to be disbursed and audited by HRA in accordance with the ARM methodology applicable to HRA payments of Medicaid funds to personal care services providers, which methodology was established prior to April 1, 2002, the effective date of both the HCRA and the MOU. On the other hand, as reflected in the 2002 MOU between DOH and HRA, HRCA funds were computed by DOH as "add-ons," independent of HRA's ARM methodology, and issued to each personal care services provider, conditioned upon HRA's prior receipt of written certification from the provider that the funds would be used solely for the purposes set forth in the HCRA. Thus, the MOU set forth a new methodology of reimbursement of HCRA funds to personal care services providers, including People Care.
Additionally, as noted, the 2001 contract between HRA and People Care states that "[i]n the event that [DOH's] method of reimbursing [People Care] is changed during the term of this Agreement, this Agreement shall be modified to reflect the new method of reimbursement." Because the ARM methodology of reimbursing People Care as stated in the contract was changed as of April 1, 2002, which date was during the term of the contract, to add the new methodology established by Public Health Law § 2807-v(1)(bb) and the MOU with respect to HCRA funds, the 2001 contract was, by its own terms, thereby modified to reflect the addition of that new methodology of DOH reimbursement of such funds. Thus, under the modified method, non-HCRA general Medicaid funds remained subject to the preexisting ARM methodology, while HCRA funds were made subject to the new methodology authorized by Public Health Law § 2807-v(1)(bb) and set forth in the MOU, including audit procedures conducted by DOH.
Furthermore, HRA's authority to conduct audits and recoup overpayments pursuant to 18 NYCRR §§ 517-518 is not applicable to HCRA payments. As Supreme Court correctly found, the relevant portions of 18 NYCRR §§ 517-518 refer to a local district's power to recoup overpayments to Medicaid providers made in connection with a "medical assistance program" provided for under Title 11 of article 5 of the Social Services Law (18 NYCRR §§ 504.1[d] [13], 518.8[a]), and the HCRA program is unquestionably not such a program. Moreover, the references throughout 18 NYCRR §§ 517-518 to the authority of the "department" to audit and recoup funds are to the "State Department of Social Services," which is now the DOH (see 18 NYCRR § 515.1[b][5] ["Department means the State Department of Social Services"]; 18 NYCRR §§ 517.2, 518.2 [incorporating by reference the 18 NYCRR § 515.1[b] definition of "Department"]). Thus, to the extent that 18 NYCRR § 505.14(c) (iv) provides that the audit and recoupment provisions of 18 NYCRR §§ 517-518 apply to the auditing and recoupment of funds [*3]granted to personal care services providers, the auditing and recoupment power provisions that 18 NYCRR § 505.14(c)(iv) incorporates by reference are solely those of the DOH.
HRA's argument that DOH ratified HRA's authority to audit and recoup HCRA funds is unavailing, as neither of the documents upon which HRA relies demonstrates that DOH, in fact, did so. At the outset, both of the documents upon which HRA relies, namely, the Veino letter and the Ulberg affidavit, are merely statements of opinion and are not binding upon DOH. Had HRA wanted a clear declaration from DOH that the authority to audit and recoup HCRA funds had been delegated to it, HRA could have requested a delegation order from DOH, but failed to do so.
Moreover, the Veino letter merely opines that DOH has specific authority to confirm the proper use of HCRA funds via audit and to recoup any unused or improperly used funds, without mention of any HRA authority in this regard and without any discussion of the MOU. The Ulberg affidavit, in which the affiant opines that DOH has conferred upon HRA auditing and recoupment authority with respect to HCRA funds by virtue of longstanding practice, fails to take into account that the sole reference to the authority to audit HCRA funds in the MOU between DOH and HRA is to the provision of Public Health Law § 2807-v(1)(bb) authorizing DOH to "audit each provider receiving [an HCRA] rate adjustment to ensure compliance with the provisions of said statu[t]e," without any further language providing for delegation to HRA, or any other agency, of DOH's auditing or recoupment powers. Moreover, the MOU's merger clause limits the parties to the specified terms. Under the terms of the MOU, the sole function expressly delegated to HRA with respect to HCRA funds was to collect written certifications from providers, on forms to be determined by DOH, attesting that the funds would be used solely for the purposes specified in the statute. Notwithstanding HRA's arguments to the contrary, the MOU renders HRA the agent of DOH only to the limited extent that HRA collected certifications from providers and acted as a conduit for the distribution of those funds from DOH to those providers.
The dissent misses the mark in arguing that we have misconstrued the scope of our previous remand in People Care I. In People Care I, the issue presented was whether there was a statutory grant of authority to delegate the responsibilities for auditing and recoupment of HCRA funds from DOH to HRA. Tellingly, in addressing that issue, this Court held that "[n]either the statute [Public Health Law § 2807-v(1)(bb)(iii)] nor the [MOU] between [DOH] and HRA delegates [the] power [to recoup HCRA funds] to HRA. Significantly, respondents [HRA] cite no specific statute or regulation that gives them the power to recoup funds awarded pursuant to Public Health Law § 2807-v(1) (bb)" (People Care I, 89 AD3d at 516). In People Care I, therefore, this Court specifically held that neither Public Health Law § 2807-v(1)(bb) nor the MOU delegated DOH's HCRA auditing and recoupment powers from DOH to HRA [FN1]. Indeed, we found no legal authority, in those documents or elsewhere, authorizing such a delegation to HRA.
Moreover, the record before this Court in People Care I included a contract between People Care and HRA dated August 1, 2002 which was identical in all material respects to the [*4]2001 contract at issue here [FN2]. In People Care I, this Court was thus made well aware of the contractual terms between the parties and did not find that any auditing or recoupment authority was, or could have been, thereby conferred upon HRA. Thus, the dissent has no basis for its claim that this Court's decision in People Care I allowed for the possibility that HRA was contractually authorized to audit or recoup HCRA funds.
The dissent's argument that certain provisions of the 2001 contract conferred upon HRA the right to audit and recoup HCRA funds from People Care is unavailing. In advancing that argument, the dissent necessarily suggests that DOH's statutory powers to audit and recoup HCRA funds, as conferred to DOH by Public Health Law § 2807-v(1)(bb) and the MOU entered into pursuant to that statute, were delegated to HRA by way of the contract between HRA and People Care, to which DOH was not a party, and which antedated the effective date of the statute. In construing the auditing and recoupment terms of the 2001 contract as applicable to HCRA funds, the dissent fails to consider that Public Health Law § 2807-v(1)(bb) and the MOU modified the audit and recoupment provisions for the portion of funds covered by the statute and the MOU, as contemplated by the 2001 contract's provision for modification of its terms to reflect a new method of reimbursement. Moreover, even if the terms of the 2001 contract providing for HRA auditing and recoupment authority (see 2001 contract, §§ 9.1[F] [referring to the "right" of HRA to "conduct() fiscal audits or other evaluations"], 3.2[A][ii] [providing for HRA's "right to recoup" funds]) were not deemed modified by the statute and the MOU in accordance with section 3.1(D), those terms would be in conflict with them, and therefore could not supersede them (see Ministers & Missionaries Benefit Bd. v Snow, 26 NY3d 466, 482 [2015] [Abdus-Salaam, J., dissenting on other grounds] ["(W)here a conflict arises between the provisions of a statute and the terms of a contract, the statute typically controls because it is the binding substantive policy determination of the legislature"]). Any such conflict, however, would arise only if section 3.1(D) were read out of the contract and if our decision in People Care I were interpreted in the manner urged by the dissent.
Relying on Matter of New York City Council v City of New York (4 AD3d 85 [1st Dept 2004], lv denied 4 NY3d 701 [2004]) (City Council) and the Ulberg affidavit, the dissent maintains that DOH has consistently supported the view that HRA has contractual authority to audit and recoup HCRA funds, and that this Court "should defer to DOH's rational construction." The dissent's reliance on City Council and the Ulberg affidavit in this regard is misplaced, however.
In City Council, this Court stated:
"Where the question is one of pure statutory reading and analysis, dependent only on accurate apprehension of legislative intent, there is little basis to rely on any special competence or expertise of the administrative agency' . . ., and no deference is required" (City Council, 4 AD3d at 97, quoting Kurcsics v Merchants Mut. Ins. Co., 49 NY2d 451, 459
[1980]).
Here, neither Public Health Law § 2807-v(1)(bb), as the governing statute, nor the MOU between DOH and HRA, entered into pursuant to that statute, contains any language delegating DOH's auditing and recoupment authority to HRA or any other agency. Moreover, because neither the statute nor the MOU suffers from any "fundamental ambiguity" in this regard, there is no reason to rely on a person such as Ulberg, whom the dissent apparently views as having "knowledge and understanding of underlying operational practices," in order to interpret either [*5]the statute or the MOU (see City Council, 4 AD3d at 97 [citations omitted]). Thus, even if the Ulberg affidavit's conclusions were binding on DOH, given the absence of any language in support of those conclusions or any ambiguity in the governing statute or the MOU, regardless of the length of time DOH and HRA have engaged in the auditing and recoupment practices described in the affidavit, its conclusions are not properly considered here (see McKinneys Cons Laws of NY, Book 1, Statutes § 76 ["Where the language of the statute is clear and unambiguous, . . . (i)t is not allowable to interpret what has no need of interpretation, and when statutory words have a definite and precise meaning, to go elsewhere in search of conjecture in order to restrict or extend the meaning"]; Schron v Troutman Sanders LLP, 20 NY3d 430, 436 [2013] ["Parol evidence—evidence outside the four corners of the document—is admissible only if a court finds an ambiguity in the contract"]). HRA also argues that, if allowed to stand, Supreme Court's decision would thwart ongoing state and local efforts to ensure that Medicaid funds are spent properly, and would disrupt longstanding practices of both DOH and HRA. Regardless of any practical concerns HRA may have, in the absence of any delegation order, amendment to the MOU, or regulation emanating from DOH authorizing HRA to audit HCRA funds, there is no legal authority demonstrating that DOH has delegated to HRA its authority to audit and recoup HCRA funds. Finally, HRA's repeated references to regulatory scrutiny and class action litigation over the sale of People Care to an employee stock ownership plan have no bearing whether HRA has the legal authority to audit HCRA funds.
The dissent maintains that People Care is estopped from challenging HRA's auditing and recoupment authority with respect to HCRA funds, in that HRA notified People Care that its hourly Medicaid reimbursement rate would increase, and People Care accepted the increased payments from HRA, including HCRA funds, without objection. It is not HRA's view of its authority with respect to HCRA funds, however, but proper interpretation of the language of the governing statute and the MOU entered into pursuant to that statute, that are dispositive in this case. Thus, it is of no moment that HRA has acted in a manner consistent with its own view of its auditing and recoupment authority, a view not shared by People Care or this Court.
The legality of the 2001 contract does not affect the fact that interpreting the contract as delegating auditing and recoupment authority to HRA with respect to HCRA funds would contravene Public Health Law § 2807-v(1)(bb)(iii). That statute expressly refers only to DOH's authority to audit HCRA funds, without any provision authorizing DOH to delegate its authority to audit and recoup such funds to HRA, nor actually doing so. As there is no provision in the statute, or in the MOU entered into pursuant to the statute, granting DOH the power to delegate its auditing and recoupment authority, the dissent's effort to imply such power is misplaced (see People Care I, 89 AD3d at 516; McKinneys Cons Laws of NY, Book 1, Statutes § 75 ["A power not expressly granted by statute is implied only where so essential to the exercise of some power expressly conferred as plainly to appear to have been within the intention of the Legislature"]).
Moreover, to the extent that the dissent perceives a conflict between the 2001 contract on the one hand and the statute and the MOU on the other, that perception is misplaced, as the 2001 contract anticipated such changes and accommodated them. As noted, the 2001 contract, by its own terms, avoided any conflict with subsequently enacted statutes by providing that "[i]n the event that [the] method of reimbursing [People Care] [was] changed during the term of this Agreement, this Agreement shall be modified to reflect the new method of reimbursement" (2001 contract, § 3.1[D]). As there is no conflict between the 2001 contract, on the one hand, and Public Health Law § 2807-v(1)(bb) and the MOU on the other, reading section 3.1(D) out of the 2001 contract in order to imply into the statute a power not provided by the Legislature would be inappropriate.
We have considered HRA's remaining contentions and find them unavailing.
Accordingly, the order and judgment (one paper) of the Supreme Court, New York [*6]County (Eileen A. Rakower, J.), entered February 5, 2018, inter alia, granting the petition, brought pursuant to CPLR article 78, seeking to annul respondents' October 20, 2008 audit which demanded recoupment of $6,998,432 from petitioner, and enjoining respondents from recouping those funds, should be affirmed, without costs.
All concur except Richter, J.P. and Gesmer, J. who dissent in an Opinion by Richter, J.P.




RICHTER, J.P. (dissenting)


On this appeal, we are asked to determine whether respondent City of New York Human Resources Administration (HRA) is authorized to audit and recoup certain Medicaid funds from petitioner People Care Incorporated, an entity that provides personal care services to New York City Medicaid recipients. I would find that the broad language contained in the contract between HRA and People Care gives HRA the requisite authority to audit and recoup the funds in question. This conclusion is supported by the New York State Department of Health (DOH), the agency that oversees Medicaid benefits in this State, and to which this Court should accord deference.
In New York State, Medicaid benefits are administered by local social services districts under the supervision of DOH. These benefits include personal care services that assist recipients with the activities of daily life. HRA, the agency that administers Medicaid benefits for the New York City local district, regularly enters into contracts with various providers to render personal care services to Medicaid recipients. All of the HRA contracts must be approved by DOH.
In November 2001, HRA and People Care entered into a contract wherein People Care agreed to provide personal care services to New York City Medicaid recipients [FN3]. In return, People Care would be paid Medicaid funds based on an hourly rate multiplied by the number of service hours billed. People Care agreed not to use any of the Medicaid funds it received for expenses that were not incurred in the performance of the contract or which violated any contractual provisions. The contract also gave HRA the authority to conduct regular audits of People Care, and to recoup Medicaid funds that either exceeded People Care's actual costs or were used in violation of the contract's provisions.
In 2002, the New York State legislature amended the Health Care Reform Act to create a new Medicaid reimbursement program designed to promote health care worker recruitment and retention (these amendments are hereinafter referred to as the HCRA). Under the HCRA, funds were to be "deposited by [DOH] . . . for the purpose of supporting the state share of adjustments to Medicaid rates of payment for personal care services . . . for local social service districts" (Public Health Law § 2807-v[1][bb][I]) (hereinafter HCRA funds). The HCRA further provided that personal care services providers that have their rates adjusted were required to use the HCRA funds solely "for the purpose of recruitment and retention of non-supervisory personal care services workers or any worker with direct patient care responsibility," and were expressly "prohibited from using [the] funds for any other purpose" (Public Health Law § 2807-v[1][bb][iii]).
In New York City, the HCRA funds were to be computed and distributed in accord with memoranda of understanding to be entered into between the State and the local social service district (Public Health Law § 2807-v[1][bb][I]). DOH and HRA entered into such a memorandum shortly after the law was passed. The HCRA also authorized DOH to audit providers and recoup any HCRA funds that were used for purposes other than that set forth in the statute (Public Health Law § 2807-v[1][bb][iii]). Critically, the HCRA did not prohibit local social service districts such as HRA from conducting their own audits and recouping misused HCRA funds under existing contracts. Nor did the memorandum of understanding between DOH and HRA contain any such restriction.
The contract between People Care and HRA required HRA to notify People Care if the Medicaid reimbursement rate was recalculated, including an explanation of how the new rate was determined. The contract further provided that the new rate would become effective as of the notification date unless People Care administratively appealed the decision. By letter dated January 28, 2003, which was during the term of the contract, HRA informed People Care that the contract's hourly Medicaid reimbursement rate had increased as a result of the HCRA. People Care did not appeal that determination, and thereafter accepted payment of the HCRA funds based on the new rate, without objection.
In 2007 and 2008, HRA conducted audits of People Care and demanded recoupment of approximately $7 million in HCRA funds that had been awarded to People Care for fiscal years 2003 and 2004 [FN4]. People Care filed an administrative appeal and argued, inter alia, that HRA had no authority to audit and recoup the HCRA funds. HRA denied the appeal, concluding that it had the authority to recoup the funds because those monies were disbursed to People Care pursuant to the Medicaid reimbursement rate in the parties' contract.
People Care then commenced this article 78 proceeding seeking to vacate HRA's audit with respect to the $7 million in HCRA funds and to enjoin HRA from recouping those monies. HRA moved to dismiss the petition on the ground that People Care failed to pursue its remedies through the alternative dispute resolution procedures set forth in the parties' contract. In opposition, People Care argued that it was not required to abide by these contractual procedures because it challenged HRA's audit and recoupment demand as wholly beyond HRA's powers. The court granted HRA's motion and dismissed the petition.
People Care appealed, and this Court reversed and reinstated the petition (89 AD3d 515]). The Court remanded the matter to give HRA the opportunity to demonstrate that it was "authorized to recoup the [HCRA] funds and whether [People Care] was excused from exhausting the contractual [dispute resolution] procedures" (id. at 516). Upon remand, after HRA filed its answer, the petition court granted People Care's petition, finding that HRA lacked the authority to audit and recoup HCRA funds. HRA now appeals.
HRA contends that its authority stems from three sources: (a) the contract between HRA and People Care; (b) certain Medicaid regulations; and (c) DOH's ratification of HRA's past audits and recoupments. I rely only on the first of these arguments — that the parties' contract, which DOH approved, gives HRA the authority to audit and recoup Medicaid funds received by People Care, including the HCRA funds at issue (see Matter of Barele, Inc. v City of N.Y. Human Resources Admin., Dept. Of Social Servs., 2010 NY Slip Op 30760[U] [Sup Ct, NY County 2010] ["(HRA's) ability to audit and recoup (HCRA funds) falls squarely within the language of (its contracts with the provider)]). Section 1.17 of that agreement broadly defines "[f]unds" as "money or anything of value transferred . . . to [People Care] in accordance with [the contract] . . [*7]. includ[ing] Rate payments." In Section 4.2(A), People Care agreed not to use funds for "[a]ny expense not actually incurred in the performance" of the contract or "[a]ny expense which violates any provisions" of the contract. Section 3.2(A) gives HRA the right to recoup certain unspent and excess funds issued under the contract's reimbursement rate, and section 4.2(D) provides that HRA has the power to recoup any funds that were used in violation of the contract. The contract also gives HRA the authority to conduct regular audits of People Care's books and records (§ 7.4[D]).
Although neither People Care nor the majority takes issue with HRA's contractual authority to audit and recoup Medicaid funds generally, they argue that the HCRA funds are somehow different from those Medicaid funds governed by the contract. This argument is unavailing. HRA has persuasively shown that the HCRA funds are merely a subset of the contractual Medicaid funds. First, the HCRA states that the new funds were earmarked for the express purpose of "supporting the state share of adjustments to Medicaid rates of payment for personal care services" (Public Health Law § 2807-v[1][bb][i]). Next, the parties' memorandum of understanding repeatedly characterizes the new funds as "Medicaid rate adjustments." The majority acknowledges this language from the HCRA and memorandum of understanding, but fails to convincingly explain why these references do not support our conclusion that the HCRA funds are, in fact, Medicaid funds. Finally, after the HCRA was enacted, HRA notified People Care that the contract's hourly Medicaid reimbursement rate was increased as a result of the new law. It bears emphasizing that People Care thereafter accepted payments based on the new rate without objection.[FN5]
I disagree with the majority's view that our previous decision "necessarily rejected" HRA's current argument that HCRA funds are a subset of Medicaid funds. In our decision, we merely concluded that neither the HCRA itself nor the memorandum of understanding provides the authority for HRA to recoup HCRA funds (89 AD3d at 516). The decision did not discuss the nature of the HCRA funds or make any determination, either explicitly or implicitly, that they are not Medicaid funds. Nor did the decision address the precise question before us now — whether the parties' contract provides HRA with the requisite authority to audit and recoup the funds.
The majority views the scope of our previous remand too narrowly. We did not remand the matter for a determination of whether DOH "delegated" its auditing and recoupment responsibilities to HRA. Rather, the remand was "to develop the record . . . as to whether HRA is authorized to recoup the [HCRA] funds" (id. [emphasis added]). Thus, our remand allowed for HRA to show that its authorization comes from its contracts with People Care, regardless of whether there was any specific "delegation order" from DOH.[FN6]
In accord with our remand, HRA developed the record by submitting a verified answer and an affidavit from John Ulberg, DOH's Medicaid Chief Financial Officer. The Ulberg affidavit confirms that DOH, the agency that oversees Medicaid benefits in this State, has consistently supported the view that HRA has the contractual authority to audit and recoup HCRA funds. Ulberg states "DOH's position" that "[HCRA] funds . . . are Medicaid funds, and thus are subject to annual auditing and recoupment by [HRA]." Ulberg explained that HCRA funds "are subject to the same rules and procedures applicable to all other Medicaid funds," including "the authority of HRA . . . to audit and recoup excess HCRA funds paid to . . . providers." Ulberg also confirmed that DOH itself does not perform audits of HRA's personal care services providers because it recognizes that HRA is authorized to conduct its own audits of those providers [FN7]. The majority's dismissal of Ulberg's affidavit as a "mere[] statement of opinion" ignores the fact that he made the submission in his capacity as DOH's Medicaid Chief Financial Officer. Because DOH is the agency in charge of overseeing Medicaid, and because the interpretation of the HCRA involves "knowledge and understanding of underlying operational practices," we should defer to DOH's rational construction (see Matter of New York City Council v City of New York, 4 AD3d 85, 96-98 [1st Dept 2004], lv denied 4 NY3d 701 [2004]).
There is no merit to People Care's argument that reading the parties' contract to allow HRA to audit and recoup HCRA funds would contravene the governing statute. Scotto v Mei (219 AD2d 181, 183 [1st Dept 1996]), upon which People Care relies, merely states that a contract entered into in violation of a statute is an illegal contract. Here, the parties' contract does not violate the HCRA. The statute contains no language that vests the power to audit and recoup HCRA funds exclusively with DOH. Nor does the statute prohibit local social services districts, like HRA, from conducting their own audits and recoupment proceedings under existing contracts. The majority's reliance upon the dissenting opinion in Ministers & Missionaries Benefit Bd. v Snow (26 NY3d 466, 482 [2015]) is misplaced. That opinion merely observes that where there is a conflict between a statute's provisions and contractual terms, the statute typically controls. Here, however, no such conflict exists.
In this Court's previous decision, we recognized that People Care could be relieved from the alternative dispute resolution procedures in the contract if it could show that there was substance to its claim that HRA acted "wholly beyond its grant of power" in auditing and seeking to recoup the HCRA funds (89 AD3d at 516). Because the parties' contract plainly gives HRA that authority, HRA did not act "wholly beyond its grant of power." There is no real dispute that People Care's substantive challenge to HRA's actions falls within the broad scope of the [*8]contractual dispute resolution procedures. Having failed to avail themselves of those procedures, People Care's article 78 proceeding must be
dismissed (see Acme Supply Co., Ltd. v. City of New York, 39 AD3d 331 [1st Dept 2007], lv denied 12 NY3d 701 [2007]; Matter of Barele, 2010 NY Slip Op 30760[U]).
Order and judgment (one paper) of Supreme Court, New York County (Eileen A. Rakower, J.), entered February 5, 2018, affirmed, without costs.
Opinion by Kahn, J. All concur except Richter, J.P. and Gesmer, J. who dissent in an Opinion by Richter, J.P.
Richter, J.P., Manzanet-Daniels, Kahn, Gesmer, Oing, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 23, 2019
CLERK



Footnotes

Footnote 1: In People Care I, this Court added, in dictum, that "it may well be within DOH's power to delegate auditing responsibilities to another agency such as HRA" (People Care I, 89 AD3d at 516). As explained above, however, we have now determined that neither of the statutes we specifically cited in People Care I in support of that statement, namely, sections 364-a and 368-c(2) of the Social Services Law, grant any such authority to DOH.

Footnote 2: The language of section 3.1(D) in both contracts is identical.

Footnote 3: The parties entered into four periodically renewable contracts covering the provision of personal care services to Medicaid recipients located in Manhattan, Brooklyn, Queens and the Bronx. Because the contracts are essentially similar, this writing will refer to the contracts as a single document.

Footnote 4: HRA also sought recoupment of other non-HCRA funds which are not at issue in this proceeding. 

Footnote 5: Contrary to the majority's position, the fact that HCRA funds are disbursed using a different methodology from other funds disbursed to People Care does not somehow transform HCRA funds into non-Medicaid funds that are exempt from HRA's contractual audit and recoupment authority.

Footnote 6: The majority argues that the inclusion of a contract between HRA and People Care in the record on appeal of our previous decision means that we have already rejected HRA's current claim that the contract provides it with the authority to recoup the funds. However, the decision speaks for itself, and says nothing about the contract.

Footnote 7: HRA's verified answer included a letter to HRA dated February 24, 2009, wherein a DOH attorney sets forth DOH's position that HCRA payments "are in all legally relevant respects Medicaid payments to Medicaid providers of services and are thus subject to the same processes and audit procedures applicable to any other Medicaid payments to such providers."